Argued March 1; affirmed April 19, 1938

# MITCHELL *v.* CITY OF PORTLAND

(78 P. (2d) 582)

Department 1.

*Frank C. Hanley,* of Portland, for appellant.

*John B. Seabrook,* of Portland (Frank S. Grant, of Portland, on the brief), for respondent.

ROSSMAN, J.   This is an action by Allen V. Mitchell, inspector of public works in the classified civil service of the City of Portland, to recover judgment for $3,518.14, being the amount of salary he would have received in the period of 21 months and 27 days in the years 1933, 1934 and 1935 had he been permitted to perform his work as an inspector. In the period just mentioned he was laid off, upon orders of his superior, in violation of the provisions of the city's charter governing civil service. For the only work he performed for the city in the years just mentioned the city made payment in full, but the complaint is founded upon a contention that the plaintiff is also entitled to payment for the period during which he performed no service for the city. From a judgment for the defendant, the plaintiff appealed.

The complaint alleges that after the plaintiff had pursued the course outlined by the city's civil service laws to qualify for the eligible list he was appointed to the position of inspector of public works on January 13, 1920, which date determined his seniority, and that later one Rudolph R. Shieve pursued a like course, obtaining seniority dated from June 12, 1920. The com-

plaint avers that in the period of 21 months and 27 days the plaintiff was given no employment, his superior explaining that there was no work to be done and that lack of funds required a reduction in the number of employees. The same pleading alleges that Shieve, however, was continued in the city's employ and performed work that should have been assigned to the plaintiff.

The evidence supports the above charges and also indicates that Shieve, whose monthly salary was precisely the same as the plaintiff's, was paid his salary. The parties agree that the plaintiff was an employee, not an officer. The evidence indicates that payment was made to Shieve in good faith. Before this action was instituted the plaintiff was reinstated in his position and is now employed by the city as an inspector of public works. His layoff was due to a misinterpretation of the city's civil service rules.

The city contends that since the plaintiff performed no work for it in the above-mentioned period of 21 months and 27 days, and that since it paid Shieve for the work which the plaintiff otherwise would have performed, the plaintiff can recover nothing from it. The plaintiff takes issue with this claim and argues that the salary was attached to his position and that since he was entitled to the latter, he is also entitled to the salary. The issue is, may a de jure employee recover for a period in which he was improperly laid off even though a de facto employee who performed the work has been fully paid.

In *Reising v. City of Portland,* 57 Or. 295 (111 P. 377, Ann. Cas. 1912D, 895), we held that an officer who had been improperly discharged could recover his salary upon being reinstated even though, in the meantime,

he performed no service for the city. The decision pointed out that the officer's right to the money was not based upon contract but was an incident of his office.

■ In *Hittell v. Chicago*, 327 Ill. 443 (158 N. E. 683, 55 A. L. R. 994), the court held that the plaintiff (chief street engineer for the city) was not entitled to recover his salary for the period he was improperly laid off; it appearing that, in the meantime, the salary had been paid to a de facto employee. The court held that it was not essential that payment of the salary to the de facto employee should be made in good faith. The report of this decision in the volume last mentioned is accompanied with an extensive annotation in which the commentator states:

"While there is much conflict as to whether or not payment of salary by a state or municipality to a de facto officer who holds the office by color of title constitutes a valid defense, when the de jure officer, after establishing his title, subsequently seeks to recover salary for the same time from the same source, the general rule prevails that this is a good defense; and it seems to make little difference generally whether the public body had notice or knowledge that the incumbent's right to the office was then being contested. And the rule has frequently been applied even to cases of removals or suspensions which have been found to be unwarranted, where the de jure officer sues for his salary after being restored to his office. The courts taking this view generally agree that, upon grounds of public policy, the office must be filled and the salary cannot be paid twice; and, further, that the de jure officer's sole remedy is against the de facto officer; they also appear generally to consider that the certificate of election, or the commission, or a judgment of a lower court in the incumbent's favor, is itself sufficient justification for paying the de facto officer. It will also be observed that some of the courts state other grounds for the rule."

The above, the commentator states, is the majority rule. He expresses the minority rule as follows:

"In some jurisdictions, however, even in cases of contests, the courts seem to have repudiated altogether the prevailing rule, by taking the view, independently of statute, that the salary from the very beginning of the wrongful occupancy of the office by the de facto officer belongs, as a matter of right to the de jure officer as an incident to the office, title to which he ultimately establishes, and not to the de facto officer at all, and that, accordingly, payment to the de facto officer, at least where made with knowledge or notice that the office was claimed by the de jure officer, does not exonerate the municipality from paying the de jure officer for the same time."

The minority rule is based largely upon a belief that title to the office entitles the officer to its emoluments. Judge Cooley, in his dissenting opinion in *The Auditors of Wayne County v. Benoit,* 20 Mich. 176 (4 Am. Rep. 382), states:

"A wrong is done to society and to public order in every instance in which the usurpation of a public office takes place; and the rules of law ought to be such as to give the greatest possible discouragement to such a proceeding. The county authorities, in a case like this, ought not to be told that they may countenance the intrusion with immunity, and deliver over to a usurper the emoluments of an office to which he has neither a legal nor a moral claim. * * * It is said, however, that the defendant has a complete remedy by recovery of damages against Miller. If I am correct in what I have already said, this is no answer to the present action. If one has a remedy against two persons for the same wrong, his action against one cannot be defeated by showing that he might have sued the other. * * * For what a farce would that be, to hold that when the county authorities are in possession of a sum of money which rightfully belongs to the defendant, they may excuse themselves from paying it over by

giving him a cause of action to the same amount against another person who may or may not be able to respond, and who in any event is to be made to pay only after the expense of a suit at law.''

In that case the defendant had been properly elected to the office of county treasurer—an office as distinguished from a mere position. Judge Cooley, it will be observed, regarded the de facto officer who improperly gained the defendant's office as an intruder. The salary was paid to him after he surrendered the office, and the officials who made the payment were aware of the fact just mentioned.

The plaintiff, of course, depends upon the minority rule. All of the decisions he cites are collected upon pages 1005 to 1014 of the annotation above mentioned. In virtually all of them the court was concerned with an officer and not with an employee. Among those he cites are *State ex rel. Hamilton v. Kansas City,* 303 Mo. 50 (259 S. W. 1045); *Gracey v. St. Louis,* 213 Mo. 384 (111 S. W. 1159); and *State ex rel. Rundberg v. Kansas City,* 206 Mo. App. 17 (226 S. W. 986). All three of these are reviewed at page 1012 of the above-cited annotation. But we observe that in *State ex rel. Gallagher v. Kansas City,* 319 Mo. 705 (7 S. W. (2d) 357, 59 A. L. R. 95), the Missouri court adopted the majority rule, and held that payment of the salary to a de facto employee (meter inspector) discharged the municipality of liability. In addition to the decisions collected in the above-cited annotation, see the collection following *Mattox v. Board of Education,* 5 A. L. R. 568 (148 Ga. 577, 97 S. E. 532). The subject is discussed in McQuillin, Municipal Corporations (2d Ed.) § 539; 10 Am. Jur., Civil Service, p. 938, § 17, and in 18 Nat. Mun. Rev. 186.

In *Matter of Barmonde v. Kaplan,* 266 N. Y. 214, 194 N. E. 681, and in *Bassler v. Gordon,* 122 Kan. 692 (253 P. 228), the facts were very similar to those before us. In the first of these the wrongly discharged employee was a paint inspector; in the second he was a dairy inspector. In each the court held that the employee was entitled to reinstatement but not to judgment against the city for the amount of the salary paid to the de facto employee in the interval. See also *State ex rel. Martin v. Seattle,* 116 Wash. 326 (199 P. 449), in which a recovery was denied against the city for the amount of salary paid to the de facto employee during the period in which the de jure employee (drawbridge engineer) was improperly kept from his employment.

██ It is our belief that better reason supports the majority rule. Civil service laws entitle the employee to reinstatement in the event of his improper discharge, but not to payment for services he never rendered. His salary or wages are the quid pro quo for work actually performed, and not a mere incident of something else. In the present instance the plaintiff allowed a year and a half to pass before he adopted a course which was likely to gain his reinstatement. In the meantime, he appeared to concur in his superior's misinterpretation of the city's civil service rules. Many of the decisions supporting the minority view emphasize the fact that the wrongfully discharged officer acted promptly. The plaintiff now seeks to justify his lack of diligence by claiming a defect in the service of the notice which directed his layoff. It is our opinion that he should have instituted proceedings to gain his reinstatement rather than wait and finally sue for the salary which, in the meantime, the city paid to Shieve.

██ The plaintiff calls attention to the fact that the defense of payment is not plead in the answer. But, as

already indicated, the complaint avers plaintiff's seniority and the fact that Shieve was given the employment to which the plaintiff was entitled. The plaintiff's evidence disclosed payment to Shieve; in other words, the latter's employment and payment were not proved by challenged testimony. Under these circumstances, the plaintiff cannot claim to have been prejudiced through surprise or inadequate opportunity to produce evidence when the appropriate legal principles were applied to these facts, for the verity of which he himself vouched. These facts disclose nonliability upon the city's part. A plaintiff whose evidence discloses a defense is deemed to have waived the defect arising from his adversary's failure to have made the appropriate averments: 21 R. C. L., Pleading, p. 534, § 96; 49 C. J., Pleading, p. 182, § 200.

It follows from the above that the judgment of the circuit court is affirmed.

BEAN, C. J., and KELLY and BELT, JJ., concur.