Argued March 31; affirmed May 26, 1942

PUGET SOUND BRIDGE & DREDGING CO. *v.*
STATE UNEMPLOYMENT COMPENSATION
COMMISSION ET AL.

(126 P. (2d) 37)

Before KELLY, Chief Justice, and BELT, BAILEY, LUSK, RAND and ROSSMAN, Associate Justices.

*Frank C. Howell*, of Portland (Wilbur, Beckett, Howell & Oppenheimer, of Portland, on the brief), for appellant.

*H. Lawrence Lister*, Assistant Attorney General (I. H. Van Winkle, Attorney General, on the brief), for respondent State Unemployment Compensation Commission.

*James Landye*, of Portland (B. A. Green, of Portland, on the brief), for respondent Ross E. Sedoris.

BELT, J. The Puget Sound Bridge & Dredging Co., a corporation organized under the laws of Ne-

vada and having its principal office in Seattle, Washington, entered into a contract with the United States government to deepen and widen the channel of the Columbia river at Devil's Bend rapids between 84 and 85 miles above Celilo falls. Ross E. Sedoris was a fireman on the drill barge engaged in such work, which was owned and operated by the above named company. Sedoris, on May 17, 1938, filed his claim for benefits under the Unemployment Compensation Law of Oregon (§§ 126-701–126-729 O. C. L. A.). The application was denied by a deputy claim investigator of the Unemployment Compensation Commission for the reason that the work performed by Sedoris was "as a member of the crew of a vessel on the navigable waters of the United States" (§126-702 (f) (F) (4) O. C. L. A.) and, therefore, not covered by the act. Sedoris appealed from the deputy's decision and a hearing was had before a referee. The referee found that the drill barge was a "vessel" on "navigable waters of the United States," but that Sedoris was not a member of the "crew" within the meaning of the exclusionary clause and was entitled to relief. The commission approved the report of the referee and the company employer thereupon appealed to the circuit court which, after a review of the record, affirmed the decision of the commission. Hence this appeal.

There are two vital questions involved: (1) Was the situs of the work within the state of Oregon? If not, the commission of this state would have no jurisdiction. (2) Was Sedoris a member of the "crew" within the meaning of the exclusionary clause of the unemployment compensation law? These two questions will be considered in the above order after a more complete statement of the facts out of which this con-

troversy arose. It is conceded that Sedoris was working on a "vessel" on navigable waters of the United States. See: *City of Los Angeles v. United Dredging Co.*, 14 F. (2d) 364.

The drill barge or scow was a registered "vessel" and had been towed from Puget Sound to the place of operations on the Columbia river. It had no means of self-propulsion. During the period of two and one-half years in which it had been engaged in improving the channel, it had moved approximately one mile. The barge was 81 feet long, 28 feet wide, and seven feet deep, and had a net capacity of 135 tons. On one side of the deck was a track consisting of two rails upon which the steam drill was moved from one end of the barge to the other when operated. On the other side of the barge was housed the boiler, winches, pumps and other mechanical equipment. Appellant speaks of it as a "seagoing vessel" whereas respondent refers to it as a lowly scow.

There were four men employed on each shift on the barge, viz: a foreman (courteously referred to by appellant as "Captain"); a fireman; a driller; and a "powder monkey." During the day, a mechanic was employed in addition to the four mentioned. It was the specific duty of Sedoris to fire the donkey engine in order to operate the steam drill, winches, and other machinery on the barge. No living quarters were provided on the barge. The men employed lived ashore at Umatilla, Oregon. "Captain" Waggoner, who was in charge of the men on the drill barge, had no master's papers authorizing him to navigate a vessel and showed no familiarity with maritime terms and regulations. None of the men had signed any seamen's articles.

The barge was anchored in the channel in line with "targets" erected under the direction of gov-

ernment engineers. Two lines were run from the winches on the barge to "dead men" on the Washington shore. The Oregon shore was too far distant for lines to reach, so anchors were placed in the river on the Oregon side and two lines were attached to the same. A series of holes were drilled in the bed of the channel and loaded with powder. Through operation of the winches, the barge was then moved down stream about 200 feet and the charges exploded. After the blasting, the barge was again returned to position for further drilling operations. The blasted rock was then scooped up, put on a barge, towed by a tug to deeper water, and dumped.

At times it was difficult to tell with any degree of certainty whether the dredging operations were in Oregon or Washington. The middle of the channel of the river marks the boundary line between the states: 9 O. C. L. A. § 1, p. 71 (11 Stat. L. Ch. 33, § 1, p. 383). Sedoris in response to the question, "Well, now, part of the time you were operating in Oregon and part of the time in Washington?" answered, "Well, it was a fifty-fifty proposition because the center of the channel has been recognized as the dividing line and we were opening up this channel for navigation." Such testimony is in keeping with that of the other witnesses relative to this phase of the case.

Plaintiff-appellant, as grounds for judicial review, alleged in its complaint that the commission erred in finding: (1) That the plaintiff was an employer and Sedoris was an employee within the meaning of the Unemployment Compensation Law of Oregon; (2) that the services performed by Sedoris were not as a member of the crew of a vessel on the navigable waters of the United States. It is further contended by appellant in its brief that the commission had no

jurisdiction of the cause in that the work performed was within the state of Washington and that the findings of the commission are not supported by the evidence.

The Oregon Unemployment Compensation law was enacted in 1935, soon after Congress had passed the so-called Federal Social Security Act (42 U. S. C. A., Ch. 7, § 301 et seq.) and was copied therefrom. The great majority of the states, through like legislation, accepted the "invitation" of the federal government to co-operate in the solution of the grave national problem of unemployment. As pointed out in *Steward Machine Co. v. Davis*, 301 U. S. 548, 81 L. Ed. 1279, 57 S. Ct. 883; 109 A. L. R. 1293, the federal act was an attempt to find a method by which the states and the federal government could "work together to a common end". In *Buckstaff Bath House Co. v. McKinley*, 308 U. S. 358, 84 L. Ed. 322, 60 S. Ct. 279, the United States Supreme Court, in referring to the Federal Social Security Act, said it was:

"designed therefore to operate in a dual fashion— state laws were to be integrated with the Federal Act; payments under state laws could be credited against liabilities under the other. That it was designed so as to bring the states into the co-operative venture is clear. The fact that it would operate though the states did not come in does not alter the fact that there were great practical inducements for the states to become components of a unitary plan for unemployment relief."

██ It is clear that this remedial legislation should be liberally construed to the end that employees receive the benefits intended and thereby effectuate the purpose of the act. As stated in 25 R. C. L. 1077, § 299:

"A remedial statute must be construed liberally so as to afford all the relief within the power of the court

which the language of the act indicates that the legislature intended to grant." (Citing numerous authorities in support of the text.)

Also, to the same effect, see *Landers v. Van Aukin,* 77 Or. 479, 151 P. 712.

Under the Unemployment Compensation law, an excise tax is imposed generally upon employers to create a fund from which employees covered by the act are to receive compensation on account of unemployment. In the instant case, the plaintiff employer contends that the act has no application and it is exempt from payment of any tax by reason thereof. In other words, plaintiff says that Sedoris was a member of the crew of a vessel on navigable waters and is, therefore, excluded from compensation under the act.

■ Where exemption from a general tax is claimed, the statute should be strictly construed against the party asserting such exemption: 25 R. C. L. 1093; 59 C. J. 1092; *Retailers' Credit Association v. Commissioner of Internal Revenue,* 90 F. (2d) 47, 111 A. L. R. 152; *Peisker v. Unemployment Compensation Commission,* 45 N. M. 307, 115 P. (2d) 62. The rule requiring liberal construction in favor of a taxpayer is not applicable where exemption is claimed: *Allen v. Shelton,* 96 F. (2d) 102.

There is no conflict between the Federal Social Security Act and the Oregon Unemployment Compensation law. The exclusionary clauses in the two acts relative to maritime work are identical. Such may also be said concerning the statutory enactments for determining jurisdiction where the work is performed within two or more states. There is no dispute as to the facts. It is simply a question of declaring the law applicable to a given factual situation. Otherwise

stated, what is the proper construction of the act as applied to the facts?

Relative to the question of jurisdiction of the commission where the work is performed "both within and without this state", the Oregon Unemployment Compensation law, in keeping with the federal act, thus provides (section 126-702 (f) (A), O. C. L. A.):

"The term 'employment' shall include an individual's entire service, performed within or both within and without this state if:

(1) The service is localized in this state; or

(2) The service is not localized in any state but some of the service is performed in this state and (i) the base of operations, or, if there is no base of operations, then the place from which such service is directed or controlled, is in this state; or (ii) the base of operations or place from which such service is directed or controlled is not in any state in which some part of the service is performed, but the individual's residence is in this state.

\*　　\*　　\*　　\*　　\*

"(D) Service shall be deemed to be localized within this state if:

(1) The service is performed entirely within this state, or

(2) The service is performed both within and without this state, but the service performed without the state is incidental to the individual's service within the state."

It is observed from the above statutory provisions that the various factors, in order of preference, for determining employment coverage, are:

(1) Place where work is "localized";

(2) Situs of "base of operations";

(3) Situs of "place from which operations are di-rected or controlled";

(4) Situs of "employee's residence."

■ The chief criterion of coverage under the uniform definition of "employment" adopted by almost all states is "localization" of such employment. If the work had all been performed in this state, it would clearly be "localized" here. However, in the light of the evidence, it appears that the work was performed about equally in Washington and Oregon. It, therefore, cannot be said that the work was localized in either state. The work in Washington was not incidental to the services rendered by Sedoris in Oregon. The term "incidental" includes any service which is temporary or transitory in nature or which consists of isolated transactions.

The "base of operations" is the next controlling factor. Was it in the state of Washington or in Oregon? The evidence is very meager relative to this question. A powder house and blacksmith shop were maintained on the Oregon shore and supplies were shipped by railroad to Umatilla, Oregon—the only town near the scene of operations. Most of the materials were then hauled by truck to the boat landing about four miles distant. The employees resided in Oregon and received their pay checks through the post office at Umatilla. The only evidence to refute the contention that the "base of operations" is in Oregon is that the principal office was maintained at Seattle, Washington, and the work directed and controlled from there.

■ It may be that the work was "directed or controlled" from the office at Seattle, but the physical "base of operations" was in Oregon and that is the controlling factor where there is no "localization" of the work within the meaning of the statute. See Sec. 1383 of Treatise on Unemployment Compensation Service (C. C. H.) wherein numerous interpretative

decisions and rulings of boards and commissions concerning the term "base of operation" are collated which support the conclusion that the commission in Oregon had jurisdiction. No court decision has been cited and, after diligent research, none has been found on the subject.

■ We cannot agree with appellant that the decision of the commission cannot be sustained for the reason that no specific finding was made as to the situs of the work. The commission's finding that the plaintiff was an employer and Sedoris an employee subject to the unemployment compensation law is, in our opinion, sufficient. A finding that Sedoris was entitled to benefits under the act necessarily implies that the services were rendered in the state of Oregon within the meaning of the act.

Having determined the situs of the work, we next consider the question as to whether Sedoris was a "member of the crew". The state act, in keeping with the Federal Social Security Act, provides that the term "employment" shall not include: "* * * * * * * (4) Services performed as an officer or member of the crew of a vessel on the navigable waters of the United States." Courts have experienced no difficulty in determining what is a "vessel" and what are "navigable waters". The bulk of interpretative litigation has centered about the personnel of scows, barges, dredges, and similar vessels. It is quite apparent, after reading court decisions and rulings of the various boards and commissions concerning who is a "member of the crew of a vessel", that there is great diversity of opinion. There are both liberal and strict constructionists. Much depends upon the particular social and economic philosophy of those who are called upon to decide such

questions. Little help is to be derived from the meaning given to such term as used in other acts such as in 46 U. S. C. A. § 688 (Merchant Seamen); Longshoremen's and Harbor Workers' Act, 33 U. S. C. A. § 901 et seq., or the various state workmen's compensation acts. Neither are we concerned with cases wherein "seamen" are seeking to impress a lien for wages as in *Saylor v. Taylor*, 77 F. 476, 23 C. C. A. (4) 343. As stated by Chief Justice Hughes, speaking for the court in *South Chicago Coal & Dock Co. v. Bassett*, 309 U. S. 251, 60 S. Ct. 544, 84 L. Ed. 732, "We find little aid in construing the term 'crew' in other statutes having other purposes".

■ The commission found that Sedoris was not a member of any crew of a vessel. Its findings in reference thereto are conclusive if supported by evidence: § 126-711, O. C. L. A. There is no conflict in the evidence as to the character of the work in which Sedoris was engaged. It is conceded that he was working on a "vessel" in navigable waters. This court is, therefore, confronted with the question: What is the legal deduction to be made from the undisputed evidence?

■■ Neither the state nor the federal act defines the term, "crew". We should, therefore, give to such term its ordinary and commonly accepted meaning in maritime law to the end that the purposes of the act will be accomplished. Ordinarily, when the crew of a vessel is referred to, those persons are naturally meant who are on board and aiding her in navigation. It is difficult to conceive of a crew of a vessel without a captain or an officer in charge. In the instant case, we look upon Waggoner as a foreman or "boss" and not as a "captain." It is true that the work in which Sedoris was engaged was a maritime project in aid of navigation and commerce. However, as fireman, he

had nothing to do with the welfare of the vessel so far as its navigation was concerned. The "vessel" upon which he worked was not far removed from being a stationary dredge. It requires a severe stretching of the imagination to think of the services performed by Sedoris as being similar to those rendered by seafaring men. He fired the donkey engine, not for the purposes of navigation of the "vessel", but to dredge a channel of the Columbia river. We think it was the intention of Congress to except from the operation of the act those employees engaged in maritime work who are ordinarily considered as seafaring men, leaving that fact to be determined by the circumstances of each case. We believe that the term, "crew" should not be limited to those persons on board who are physically causing the vessel to move through the water, but to those contributing in some way to its operation and welfare as an instrument of navigation. Hence, a cook or steward on board a vessel whose primary purpose is to transport freight or passengers might well be called a member of the "crew" because such services promote the welfare and operation of the vessel as an agency of transportation.

It is urged by appellant that this court must follow the construction given by the federal courts to the term "member of a crew" in the exclusionary clause of the act, as to do otherwise would conflict with federal maritime jurisdiction. Such contention is based upon the assumption that the services performed by Sedoris were of such maritime character as to be excluded from coverage under the unemployment compensation law. We agree that, if the United States supreme court in passing upon a similar factual situation had held that a person thus engaged was a

"member of a crew" as the term is used in the Federal Social Security Act, this court would be bound thereby. We are thoroughly in accord with the proposition that no construction of the act is valid if it materially conflicts with the admiralty jurisdiction of the federal government: *Knickerbocker Ice Co. v. Stewart*, 253 U. S. 149, 40 S. Ct. 438, 64 L. Ed. 834, 11 A.L.R. 1145. The grant of admiralty jurisdiction to the federal government by the constitution was intended to commit direct control to it and to relieve maritime commerce of unnecessary burdens by reason of discordant laws of the several states.

■ We inquire, however, what has been the construction of the term "crew" as declared by the federal courts? The United States supreme court has not determined the question. The decisions of the various district, federal and intermediate courts of appeal are in conflict: Columbia L. Rev. Vol. 41, p. 1217; Tulane L. Rev., Vol. 15, p. 241. The interpretative decisions of federal administrative boards and commissions—which are only persuasive and not controlling— are likewise far from being in accord. In the light of such divergence of opinion, this court feels free to use its own judgment and will be guided by what it considers the better reasoned cases.

■ In order that the services performed by an individual upon a vessel on navigable waters of the United States be excluded from coverage under the unemployment compensation law, it must be shown that such services substantially tend to promote the welfare of the vessel as an agency of navigation. It is not sufficient only to show that such services are incidental to navigation: *South Chicago Dock Co. v. Bassett*, (U. S.), supra; *De Wald v. Baltimore & Ohio R. Co.*, 71 F. (2d) 810; *Diomede v. Lowe*, 87 F. (2d) 296; *Moore Dry Dock*

*Co. v. Pillsbury,* 100 F. (2d) 245; *Hawn v. American S. S. Co.,* 107 F. (2d) 999; *Shore Fishery v. Board of Review of U. E. Comm'n,* 127 N. J. L. 87, 21 A. (2d) 634, 636; *The Bound Brook,* 146 F. 160; *The Buena Ventura,* 243 F. 797. See well-considered opinion of General Counsel for Unemployment Commission of South Carolina, State Series, Vol. 2, No. 1, U. C. I. S.— 1002 S. C.

We are not unmindful that the United States supreme court in *South Chicago Dock Co. v. Bassett,* supra, decided February 26, 1940, had under consideration the Longshoremen's and Harbor Workers' Act, and not an unemployment compensation act, but its discussion of the exemption clause with reference to "master or member of a crew of a vessel" in the act is nevertheless illuminating, even though difficult to reconcile with what the court said concerning the term, "seamen" in *Ellis v. U. S.,* 206 U. S. 246, 51 L. Ed. 1047, 27 S. Ct. 600, 11 Ann. Cas. 589—with four justices dissenting. In the Bassett case, the court, in holding that the employee injured was not a member of a "crew", quoted with the approval from *The Bound Brook,* supra, wherein the term was thus defined:

"When the 'crew' of a vessel is referred to, those persons are naturally and primarily meant who are on board her aiding in her navigation, without reference to the nature of the arrangement under which they are on board."

The court also quoted from *The Buena Ventura,* supra, wherein it was said in substance that one who served the ship "in her navigation" was a member of the "crew".

None of the above cited cases, excepting that of *Shore Fishery Co. v. Board of Review of U. E. Comp.*

*Comm'n*, supra, involve construction of unemployment compensation acts and are, therefore, not authorities on the precise question under consideration, but the same may be said concerning *Saylor v. Taylor*, supra; *Maryland Cas. Co. v. Lawson*, 94 F. (2d) 190; *Kibadeaux v. Standard Dredging Co.*, 81 F. (2d) 670, cited by appellant.

*Woods Bros. Construction Co. v. Iowa Unemployment Commission*, 229 Iowa 1171, 296 N. W. 345, relied upon by appellant, is in point and supports its contention that Sedoris was a member of the "crew" and, therefore, not entitled to compensation under the act. In this case, claimant was employed on a floating barge on the Missouri river to weave lumber mats. After the mats were woven, rocks were placed thereon and the mats were sunk in the bed of the river at places where the channel needed improvement. The court, in holding that claimant was excluded from coverage, based its decision principally upon the fact that he was engaged in a maritime project, viz, "improvement of the navigability of the river." With all deference to such court, we think the work was merely incidental to navigation. It had nothing whatever to do with the welfare of a "vessel," so far as its navigation is concerned.

█ It would greatly extend this opinion to review the facts in the numerous authorities cited. We think the better reasoned cases support the decision of the commission that Sedoris was not a member of a "crew" and, by reason thereof, is entitled to the benefits of the unemployment compensation law.

The decree is affirmed.

LUSK, J., took no part in this decision.