Argued January 21, affirmed in part; reversed in part and
remanded for further proceedings in accordance with
this opinion April 1, 1971

MYERS, *Respondent-Cross-Appellant, v.* BOARD
OF DIRECTORS OF TUALATIN RURAL FIRE
DISTRICT ET AL, *Appellants-Cross-Respondents.*

SHERWOOD, *Respondent-Cross-Appellant, v.*
BOARD OF DIRECTORS OF TUALATIN RURAL
FIRE DISTRICT ET AL, *Appellants-Cross-Respondents.*

483 P2d 95

*Fred A. Anderson*, Tigard, argued the cause for appellants-cross-respondents. With him on the briefs were Anderson & Dittman, Tigard.

*David F. Rennie*, Portland, argued the cause for respondents-cross-appellants. With him on the briefs were Parks, Teiser & Rennie, Portland.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

THORNTON, J.

This is a dispute between the Board of Directors of the Tualatin Rural Fire District and two discharged firemen over the right of the discharged employes to

reinstatement to their former positions, with retroactive pay. Petitioners were employed by the fire district July 1, 1965, and were dismissed May 16, 1968, in a dispute over "standby time" and other matters. Following their dismissal the employes each brought a mandamus proceeding to compel the directors to grant such relief. The two cases were consolidated for trial. The trial court ordered reinstatement but denied retroactive pay.

Both parties appealed, the directors appealing from the judgment of the lower court granting the writ, and the two firemen from the refusal of the trial court to grant retroactive pay.

The principal questions presented by the numerous assignments of error may be summarized as follows:

(1) Does the firemen's civil service act (ORS 242.702 to 242.824) apply to the Tualatin Rural Fire District? If so, did the fire district comply with the act?

(2) Is mandamus a proper remedy in this case?

(3) Did the trial court err in refusing to consider evidence of the reasons underlying the discharge of petitioners?

(4) Are petitioners entitled to reinstatement with back pay?

The salient facts are as follows:

The Tualatin Rural Fire District was organized under ORS ch 478. In 1959 the Oregon legislature enacted a compulsory civil service law requiring substantially every political subdivision[1] employing four

---

[1] In State ex rel Heinig v. Milwaukie et al, 231 Or 473, 373 P2d 680 (1962), the Supreme Court held that the employment and discharge of personnel in a *city* fire department was a matter of local, rather than state, concern and therefore the Act was ineffective to

or more full-time firemen, not including its fire chief, to establish a comprehensive civil service system for its fire department. This enactment, Oregon Laws 1959, ch 252, is now codified as ORS 242.702 to 242.824. This statute will hereinafter be referred to as simply "the Act."

Section 47 of the Act provided that the law should take effect September 1, 1960.

Under the Act several steps were necessary to set up a civil service system for firemen including: (1) Appointment or confirmation by the governing body of the political subdivision of a civil service commission composed of three members;[®] (2) the making by this commission of rules and regulations to "provide in detail the manner in which examinations shall be held, and appointments, * * * reinstatements, suspensions and discharges shall be made"; (3) the classification by the commission of all of the firemen of the subdivision; and (4) the publication by the commission of all rules and regulations promulgated.

The Act specifically provides the procedure for dismissal, demotion, suspension or deprivation of privileges of all permanent employes, requires a written accusation to be served on the employe, requires a public hearing on demand and allows the em-

---

require a home rule city to establish a state-mandated civil service system for city firemen.

[®] Oregon Laws 1959, ch 252, § 3 (1) provides:

"There hereby is created in each political subdivision subject to this Act a civil service commission composed of three members appointed or confirmed by the governing body of the political subdivision according to its charter, ordinances or regulations. If the political subdivision has an elected fire commission, the members of the civil service commission shall be appointed by the fire commission subject to confirmation by the governing body of the political subdivision." (Codified as ORS 242.706 (1).)

ploye to be represented by counsel. It also provides that if the commission finds that the dismissal "was not made in good faith for cause, the commission shall order the immediate reinstatement of the employe * * *. Reinstatement shall be retroactive and entitle the dismissed employe to pay or compensation or special privileges from the time of dismissal * * *."

Respondents failed to appoint a civil service commission as required by the above statute, nor did they take other steps required by the law. They contend that they established a comparable system and were therefore exempt from the Act as allowed by another section of the law (ORS 242.704).

The first question confronting us is the contention by respondents that the firemen's civil service law does not apply to respondents since "ORS 242.702 (8) [and] (9) restrict the application of said statutes to municipal organizations acting or authorized under ORS 476.310 to 476.340 to combat fire 'on Zone 2 rural lands.'" Respondents urge that since they do not combat fire on zone 2 rural lands, they are not subject to the Act.

ORS 242.702 (8) reads:

"'Governing body' means the council or city commissioners of a city, the county court or board of county commissioners of a county, the board of directors of a rural fire protection district, the board of commissioners of a domestic water supply corporation and the county court or board of county commissioners acting under ORS 476.310 to 476.340 for the purposes of preventing and controlling fire on zone 2 rural lands."

ORS 242.702 (9) reads:

"'Political subdivision' means any city, county, municipal corporation, rural fire protection district,

domestic water supply corporation or *organization authorized under ORS 476.310 to 476.340 to combat fire on zone 2 rural lands which employs four or more full-time fire fighters, not including the chief of the fire department."* (Emphasis supplied.)

ORS 476.310 to 476.340 generally provide machinery whereby the governing body of each county, in cooperation with the State Board of Forestry, may zone certain rural lands "lying outside the boundaries of incorporated cities, organized rural fire protection districts, federal and state-owned lands, lands protected under ORS chapter 477," forest protection districts, etc., for the purpose of preventing and controlling fires.

The reference in the definition of political subdivision in ORS 242.702 (9) to an

"* * * [o]rganization authorized under ORS 476.310 to 476.340 to combat fire on zone 2 rural lands * * *"

relates to the authority of the governing body of the county to zone lands not otherwise protected by fire fighting districts or organizations into zone 1 and zone 2. ORS 476.310 (1).

Zone 1 is composed of "forest, range, grass or undeveloped lands, or any of such lands intermingled with grazing and agricultural lands." ORS 476.310 (1)(a).

Zone 2 is composed of "rural lands not included in zone 1." ORS 476.310 (1)(b).

For the purpose of preventing and controlling fires in zone 2 lands, the county is authorized under ORS 476.330 (1) to

"* * * [E]stablish and maintain fire fighting

and fire control facilities and contract with existing fire control agencies, either individuals, associations, corporations, cities or rural fire protection districts * * *."

■■ Respondents would interpret the Act so that it would not apply to any political subdivision whatever unless it combats fire on zone 2 rural lands. It is manifest that the object of the statutory definition of "governing body" in ORS 242.702 (8) and of "political subdivision" in ORS 242.702 (9) and ORS 242.704 (1) is to put under civil service all political subdivisions which do not have a civil service system and which have four or more full-time fire fighters.

The principles of statutory construction applicable here were stated in *Holman Tfr. Co. et al v. Portland et al*, 196 Or 551, 565, 249 P2d 175, 250 P2d 929 (1952):

> "* * * A statute is to be construed with reference to its manifest object, and, if the language is susceptible of two constructions, one which will carry out and the other defeat such manifest object, it should receive the former construction. 2 Sutherland, Statutory Construction (3d ed), 338, Sec. 4704 * * *."

■ Next, as to respondents' contention that the district had established a comparable civil service system, the lower court held that since (1) no written notice of charges was served on the petitioners, (2) the right to counsel had been denied, (3) no independent review board was established and (4) no civil service commission was ever appointed, the substitute system was not acceptable in lieu of the statutory civil service system. We agree that respondents had not complied with the Act. ORS 242.704.

■ Mandamus was a proper remedy in this case.[9] *State ex rel Maizels v. Juba*, 254 Or 323, 460 P2d 850 (1969); *Nelson v. Baker et al*, 112 Or 79, 227 P 301, 228 P 916 (1924); *Richards v. District School Board*, 78 Or 621, 153 P 482 (1915).

■ Where mandamus lies to reinstate a civil service employe who has been dismissed from his position in violation of civil service laws, reasons or causes for dismissal are immaterial. *Ahlstedt v. Board of Education*, 79 Cal App2d 845, 180 P2d 949 (1947). The trial court did not err in refusing to hear evidence and testimony offered by the district as to the alleged reasons for dismissal. Under the Act this was the function of the civil service board which, in this case, was never appointed as required by the Act. *Ahlstedt v. Board of Education*, supra.

Respondents contend that by their failure to put the Act into effect petitioners have been deprived of the benefits of the Act, including retroactive reinstatement.

■ The case at bar is very similar to two cases cited by petitioners. In *Simpson v. City of Grand Island*, 166 Neb 393, 89 NW2d 117 (1958), a city council refused to appoint a civil service commission and to take other steps necessary to bring the city within the

---

[9] ORS 34.110 provides:

"A writ of mandamus may be issued to any inferior court, corporation, board, officer or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust or station; but though the writ may require such court, corporation, board, officer or person to exercise its or his judgment, or proceed to the discharge of any of its or his functions, it shall not control judicial discretion. The writ shall not be issued in any case where there is a plain, speedy and adequate remedy in the ordinary course of the law."

coverage of a civil service act which the city was compelled, by state law, to adopt. Plaintiff in that case was dismissed from the police department without proper civil service procedures. The Supreme Court of Nebraska ruled that:

> "* * * The failure of the city council to provide a civil service commission under the terms of the civil service act had the effect of suspending the power of discharge which is lodged solely in the commission by the act. The power of discharge cannot be exercised because the city has failed to establish the commission to which the power of discharge was delegated by the Legislature * * *. The plaintiff does not lose his civil service rights under the act because the city fails to take the steps to make the act effective. The statutes may not be circumvented in any such manner. We hold therefore that plaintiff's purported discharge from the police department was without validity and noneffective." 166 Neb at 399.

In *Logan v. Two Rivers*, 222 Wis 89, 267 NW 36 (1936), the Supreme Court of Wisconsin ruled that:

> "* * * The failure of the common council to provide for the organization of a board of police and fire commissioners within thirty days from the effective date of the act suspended the power of removal which is lodged in the board. It cannot be exercised because no board has been provided. The failure to provide for the board does not add to the powers of the city manager under the statute. If the statute is valid, the act of the city manager in attempting to discharge the plaintiff was without validity and not effective." 222 Wis at 93.

We adopt the rationale of *Simpson* and *Logan* and hold that the trial court correctly concluded that respondents had no authority to discharge petitioners, except in the manner provided in the Act, and that petitioners must be reinstated.

The trial court denied retroactive pay, apparently on the ground "that both petitioners were forthwith replaced by other employees" and had since obtained other employment. The common law rule is that in the absence of statute a public employe cannot recover salary for the period of his wrongful suspension or discharge. *Mitchell v. City of Portland*, 159 Or 91, 78 P2d 582 (1938). Here the common law rule has been expressly abrogated by this Act (ORS 242.802). Had the discharge of these petitioners taken place in a district which was in full compliance with the state law, the Act (ORS 242.802) authorizes the civil service commission, if after hearing it finds that the fireman was improperly dismissed, to order immediate reinstatement of the employe in the position from which he was dismissed, with retroactive pay. But there was no civil service commission in existence.

■ We are dealing with a remedial statute presumably designed to upgrade the caliber of fire protection in populated areas of the state by professionalizing fire fighters. A remedial statute is construed liberally to effectuate its purposes. *Boling v. Nork*, 232 Or 461, 375 P2d 548 (1962) (Workmen's Compensation Act); *Sunshine Dairy v. Peterson et al*, 183 Or 305, 193 P2d 543 (1948) (Milk Control Act); *Puget Sound B. & D. Co. v. S.U.C.C.*, 168 Or 614, 126 P2d 37 (1942) (Unemployment Compensation Act).

■ Applying the above principle and the rule laid down in *Simpson v. City of Grand Island* and *Logan v. Two Rivers*, both supra, petitioners are entitled to the benefits they would have received under ORS ch 242 if the legislative mandate had been followed. ORS 242.802.

■ While ORS 242.802 makes no provision for off-

setting the amounts earned in other employment, the majority rule is that where, as here, a wrongfully discharged civil service employe is entitled to reinstatement, the public employer is entitled by way of mitigation of damages to a credit of the amount earned by the employe (or which could reasonably have been earned by him) during the term of employment from which he was wrongfully discharged or suspended. *Corfman v. McDevitt*, 111 Colo 437, 142 P2d 383, 150 ALR 97 (1943); 15 Am Jur2d 511, Civil Service § 51; see also cases collected in Annotation, 150 ALR 100, 113-120, "Earnings or opportunity of earning from other sources as reducing claim of public officer or employee wrongfully excluded from his office or position."[2] The burden of establishing by affirmative evidence the existence of any circumstances which would entitle the public employer to a mitigation of the damages suffered by the employe lies on the public employer. See cases collected in Annotation, 150 ALR 100, 121.

The rule allowing offsetting has been applied where civil service law provided that such employe " 'shall be reinstated with full pay for the entire period during which he may have been prevented from performing his usual employment * * *.' " *Seltzer v. Reading*, 151 Pa Super 226, 30 A2d 177 (1943). *Seltzer* was followed in *Vega v. Burgettstown Borough*, 394

[2] In this same connection we believe that attention should be called to Rockwell v. School Dist. No. 1, 109 Or 480, 220 P 142 (1923), and Stoddard et al v. School Board Dist. 91, 140 Or 203, 12 P2d 309 (1932). Both cases involved actions to recover salary due for breach of teachers' contracts. Our Supreme Court followed the majority rule, holding that the public employer was entitled to offset amounts earned by the school teachers during the period they were wrongfully excluded from their teaching positions.

Pa 406, 409, 147 A2d 620 (1959). In *Seltzer* the court said:

"* * * The Act of 1933 was intended to provide security to an employee who had achieved civil service status, in the tenure of his service and to prevent loss in income when unlawfully discharged. That is all that is implied in the provision for reinstatement 'with full pay.' * * *" 151 Pa Super at 229.

In *Vega*, after quoting with approval the foregoing from *Seltzer*, the Pennsylvania Supreme Court added:

"Undoubtedly, the legislature intended to do no more than prevent a monetary loss by the dismissed employee and to protect him from possible economic retribution by the discharging authority upon reinstatement. The problem of the treatment of earnings from outside sources is not governed by the quoted phrase ['shall be reinstated *with full pay* for the entire period during which he may have been prevented from performing the usual employment * * *']. The improperly dismissed employee is protected from financial loss but not to be unjustly enriched." 394 Pa at 409.

Whether petitioners were "forthwith replaced by other employees," or whether petitioners were public officers or public employes of the district, is beside the point. The Act makes no such distinctions. For this reason neither *Mitchell v. City of Portland*, supra, nor *Reising v. Portland*, 57 Or 295, 111 P 377 (1910), is controlling here.

In other assignments of error the respondents attack the Act on a variety of grounds, e.g., that the Act has been repealed by implication through subsequent amendments of the rural fire district laws; that it denies the district home rule as guaranteed by Oregon Constitution, Art IV, § 1(a) [sic]; that it violates

the six per cent limitation provisions in Art XI, § 11, and is in conflict with the Local Budget Law; that it grants special privileges and otherwise violates Art I, § 20; that it delegates legislative power without providing a sufficient standard to guide the administrative body; that the exceptions provided in the law result in lack of uniform application upon all political subdivisions; that the statute is inconsistent with the rural fire district law and is therefore arbitrary, inconsistent and vague and therefore unconstitutional.

We find that the Act was not repealed by implication through amendments of the rural fire district law, and that it is constitutional in all respects challenged by respondents.

Affirmed in part; reversed in part and remanded for further proceedings in accordance with this opinion.