Submitted on record and briefs February 28,
resubmitted in banc June 16, reversed in part;
reversed and remanded in part June 23,
reconsideration denied August 7,
petition for review denied September 23, 1980 (289 Or 677)

# PAM'S CARPET SERVICE, INC.,
*Petitioner,*

*v.*

# EMPLOYMENT DIVISION,
*Respondent.*

## (No. 78-T-9, CA 14771)

613 P2d 52

Richard C. Hunt, Richard F. Liebman, and Spears, Lubersky, Campbell & Bledsoe, Portland, filed the briefs for petitioner.

James A. Redden, Attorney General, Walter L. Barrie, Solicitor General, and Al J. Laue, Assistant Attorney General, Salem, filed the briefs for respondent.

SCHWAB, C. J.

Thornton, J., dissenting opinion.

## SCHWAB, C. J.

Petitioner appeals from a referee's decision ruling that about 60 persons who installed carpet and other products for petitioner over a two year, nine month period were petitioner's employes, not independent contractors, and therefore petitioner was liable for unemployment compensation tax payments based on the amounts paid to the installers during the audit period.

I

The distinction between an employe and an independent contractor, for present purposes, is expressed in ORS 657.040:

"Services performed by an individual for remuneration are deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the assistant director that:

"(1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(2)(a) Such individual customarily is engaged in an independently established business of the same nature as that involved in the contract of service; or

"(b) Such individual holds himself out as a contractor and employs one or more individuals to assist in the actual performance of services and who meets the following criteria shall be deemed to have an independently established business:

"(A) The individual customarily has two or more effective contracts.

"(B) The individual as a normal business practice utilizes separate telephone service, business cards and engages in such commercial advertising as is customary in operating similar businesses.

"(C) The individual is recognized by the Department of Revenue as an employer.

"(D) The individual furnishes substantially all of the equipment, tools and supplies necessary in carrying out his contractual obligations to his clients."

[677]

Petitioner argues that the installers are independent contractors under ORS 657.040(1) and (2)(a). Petitioner does not claim that the installers are independent contractors under ORS 657.040(2)(b). As discussed more fully below, however, ORS 657.040(2)(b) is of some relevance to this case because: (1) the Supreme Court has held that the more specific (2)(b) criteria can be considered in deciding a more general (2)(a) claim, *Republic Dev. Co., Inc. v. Emp. Div.*, 284 Or 431, 438, 587 P2d 466 (1978); and (2) much of the referee's analysis was couched in (2)(b) terms.

## II

Stating the facts is difficult because there are three different sets of findings by the referee which are not completely consistent.

The first referee's decision was rendered after the date of this court's decision in *Republic Dev. Co.* (32 Or App 263, 574 P2d 660 (1978)) but before the Supreme Court's decision in that case. That first referee's decision relied heavily on this court's analysis in *Republic Dev. Co.* On petitioner's initial appeal, we remanded for reconsideration (39 Or App 203, 591 P2d 427 (1979)) in light of the Supreme Court's opinion in *Republic Dev. Co.* The referee then issued a "Reconsidered Referee Decision." Petitioner again appealed. At the time of oral argument the parties agreed to another remand for additional findings, which we did by unpublished order. The referee then issued a "Second Reconsidered Referee Decision."

We have the disquieting feeling that somewhere in the course of these proceedings the referee shifted from adjudication to advocacy.[1] For example, the referee's original decision found as a fact:

---

[1] The referee's second decision included the following commentary:

"It is noted that there has been some perplexing language in some of the recent decisions by both appellate courts of this state as to what constitutes 'risk capital' in cases of this nature. * * *"

> "Approximately one half of the installers whose services are utilized by [petitioner] will hire helpers at one time or another to assist them which, however, may only involve the moving of furniture or carrying carpet into a home."

By the time of the referee's third decision, this finding had undergone a metamorphosis:

> "* * * there is no credible evidence in the record that any of [the installers] employed anyone to assist them with their work on [petitioner's] jobs * * *.
>
> "Although [petitioner's owner] testified that 'probably half' of the [installers] hired other people to assist them with their work, this was but an assumption on the part of the witness. * * *"

Despite such inconsistencies, we turn to an attempt to summarize the facts.

---

The referee then discussed *Teton Industries v. Emp. Div.,* 26 Or App 725, 554 P2d 580, *rev den* (1976), and *Byrne Trucking, Inc. v. Emp. Div.,* 284 Or 443, 587 P2d 473 (1978). In *Teton Industries* this court stated that persons performing repair and maintenance services for apartment house owners "* * * had invested risk capital because they furnished their own equipment." 26 Or App at 731. In *Byrne Trucking* the Supreme Court suggested that the owners of trucks and trailers had invested capital. 284 Or at 446 and 447. The referee proceeded to express his disagreement with *Teton Industries* and *Byrne Trucking:*

> "* * * No one would seriously contend that a carpenter's hand tools are an investment of 'risk capital' and yet it is no different when a trucker buys a piece of equipment. Although he may run all kinds of 'risks' in acquiring and operating a vehicle, the purchase of it in principle is no different from the carpenter buying himself a new hammer."

The referee also disagreed with part of the Supreme Court's decision in *Republic Dev. Co., Inc. v. Emp. Div.,* 284 Or 431, 587 P2d 466 (1978):

> "Footnote number 6 to the Supreme Court's decision in Republic Development Company indicates that perhaps a cement contractor by the name of Madsen in furnishing services came within the statutory definition of 'an independently established business' of subsection (2)(b). Yet it should be noted from the facts of the Referee Decision in the case that Mr. Madsen did not employ anyone on other than a part time basis and, therefore, it is doubtful that even he met the statutory criteria of ORS 657.040(2)(b) which requires the individual, among other things, to: '* * * employ(s) one or more individuals to assist in the actual performance of services."

[679]

Petitioner sells carpets, hard-surface coverings (tile, formica, etc.) and draperies. Most of petitioner's customers pay a price for such products that includes installation. Petitioner then makes ad hoc arrangements in each case for installation by contracting with installers that it believes to be independent contractors.

Each installer has his own truck and furnishes his own tools, equipment and installation supplies. Petitioner furnishes only the customer's order and the material to be installed. Many of the installers here in question use an assumed business name and have business cards. All of the installers bill petitioner once or twice a month for installation work performed. All of the installers are free to and do, in fact, also work for petitioner's competitors. Some of the installers compete directly with petitioner by also selling carpet.

### III

For petitioner to establish that the installers are independent contractors, it must first show that they are free from its direction and control. ORS 657.040(1). The referee concluded that the installers were not free from petitioner's direction and control. The referee's findings of fact that are supported by the evidence require the opposite conclusion.

The referee found:

" * * * [Petitioner] seldom has to give any instructions about how the work is to be done after initially telling the installer what is required * * *.

"[Petitioner] never makes any inspection of a completed job, and if there should be a complaint concerning workmanship of an installer it is the latter's obligation to correct it."

* * *

"* * * [Petitioner] did, of course, direct the installers as to when and where each of them performed the work. * * *"

We find no evidence to support the conclusion that petitioner controlled "when" installation work was to be performed. Three different installers testified that the standard operating procedure was for them to negotiate directly with the customer as to the work completion date. For example, one stated:

> "If it's an occupied house you have to practically discuss it [work completion date] every time [with the customer], but if it's unoccupied you pretty much do it on your own."

There was no evidence to the contrary.

The owner of petitioner testified that the installers had complete freedom about how to perform a job:

> "* * * we leave it up to these men to lay this job out and do it in a professional manner because many times where we figure it out on paper with so many seams, or for doing it some way, when they get out on the job they can lay it out in a better manner in which there will be less seams and get the better looking job. * * * They don't have to call us; they just do it."

In sum, the record and referee's findings supported by the evidence reveal that petitioner had a right to control only "where" the installers performed their services. Right to control is a matter of degree. See, *Michelet v. Morgan,* 11 Or App 79, 501 P2d 984 (1972). Even in the purest of independent contractor situations — say, services rendered by an attorney, doctor or accountant — the client could give some instructions about where the services were to be performed. We hold that petitioner's installers are substantially free from its direction and control.

### IV

We turn to the question of whether the installers were shown to have independently established businesses within the meaning of ORS 657.040(2).

The common denominator that runs through the various decisions by the referee is that there are certain essential ingredients of an independently established business: (1) investment of risk capital; (2)

employment of others; and (3) being recognized by the Department of Revenue as an employer. The extreme reliance that the referee placed on the latter two factors is indicated by one passage:

"* * * because none of [the installers] employed anyone on a regular basis nor were any of them recognized by the Department of Revenue as an employer, they failed to meet the minimum requirements of the exclusionary provisions of either subsection (2)(a) or subsection (2)(b) of ORS 657.040. * * *"

*See also,* n 1, *supra.*

Certain it is that being a recognized employer of others is essential to a (2) *(b)* claim; but we disagree with the referee's analysis that the same factors are controlling in a (2) *(a)* claim. Although *Kirkpatrick v. Peet,* 247 Or 204, 428 P2d 405 (1967), could be read as supporting the referee's analysis, we think that the Supreme Court has since held squarely to the contrary:

"* * * we conclude the legislature did not intend for the addition of (2)(b) to mean that a court could not consider evidence going to those criteria, together with evidence of any other relevant criteria, if the person claiming the exemption could not satisfy all of (2)(b) and was relying on (2)(a) instead. * * *" *Republic Dev. Co., Inc. v. Emp. Div.,* 284 Or at 438.

In other words, being a recognized employer of others — a (2) *(b)* criteria — can be relevant when deciding a (2) *(a)* case, but is not necessarily controlling.

The referee also seems to have regarded the investment of capital as essential to proving an independently established business within the meaning of ORS 657.040(2)(a). Again, we disagree. The Supreme Court's opinions in *Kirkpatrick* and *Republic Dev. Co.,* read together, tell us that the quantity and quality of investment in a business is relevant to whether it is independently established, but are not necessarily controlling. *See also, Byrne Trucking, Inc. v. Emp. Div.,* 284 Or 443, 447, 587 P2d 473 (1978): investment of

capital "is only one of the major criteria for an independently established business * * *."

In summary, we think the referee was in error in his approach to this (2)(a) claim. As we read the Supreme Court's decisions, several factors have been relied on in defining what is an independently established business within the meaning of (2)(a), but no single factor has ever been given the conclusive significance in a (2)(a) case that the referee attached to investment of capital, employment of others or being a recognized employer.

Moreover, the referee overlooked one of the more significant criteria, at least on the facts of this case. In *Republic Dev. Co.,* 284 Or at 440, the Supreme Court reiterated a (2)(a) criteria it had identified in *Kirkpatrick,* 247 Or at 214: dependency, *i.e.,* whether the alleged employe is economically dependent upon the alleged employer. *Byrne Trucking* may cast some doubt on the continued significance of the dependency criteria:

> "* * * The operators' testimony that if they were terminated by petitioner they would make a similar arrangement with another trucking firm is irrelevant. Any workman who loses his job can go to work for someone else — providing there is another job for him to go to. Unemployment compensation is designed to provide protection during those times when an arrangement cannot be made with another firm providing similar services because there is insufficient demand for similar services." 284 Or at 447.

We conclude, however, that the dependency criteria remains viable in at least one respect. ORS 657.150 requires that unemployment compensation claimants have earned certain minimum amounts in order to be eligible for benefits.[2] Stated differently, a person who

---

[2] ORS 657.150 provides in part:

"(1) After June 30, 1959, an individual shall be paid benefits during his benefit year in an amount which is to be determined by taking into account his weeks of work in subject employment in his base year as provided in this section.

earns less than the required minimum amounts is not eligible for the protection the Supreme Court mentioned in *Byrne Trucking.* It seems to us that an alleged employe not eligible for unemployment compensation because of ORS 657.150 is rather clearly not economically dependent upon his alleged employer.

We are aware that persons who are obviously employes, and obviously not independent contractors, can earn less than the minimum amounts specified in ORS 657.150 if, for example, they only work for an employer for a few weeks. Such persons should, of course, have all wages earned during their base years added together to determine eligibility. But when a person is not obviously an employe, and a colorable claim is made that he is an independent contractor, we think that *de minimis* compensation paid to the individual in question, *i.e.,* less than the amounts specified in ORS 657.150, tips the scales strongly toward a finding of lack of economic dependency, which in turn requires the conclusion that the individual is an independent contractor.

This reasoning is sufficient to rule in favor of petitioner as to most of the installers here in question. Over the two year, nine month audit period about 50 of

"(2)   To qualify for benefits an individual must have had at least 18 weeks of work with an average of $20 per week in subject employment in his base year. However, to qualify for benefits, his total base year wages must be $700 or more, and in addition thereto he must have earned wages equal to six times his weekly benefit amount in employment, whether or not in covered employment, for service performed subsequent to the beginning of a preceding benefit year if benefits were paid to him in such preceding benefit year.

"(3)   If the wages paid to an individual are not based upon a fixed period of time or if his wages are paid at irregular intervals or in such manner as not to extend regularly over the period of employment, for the purposes of subsections (2) to (5) of this section, his wages shall be allocated in accordance with regulations prescribed by the assistant director. Such regularations shall, in so far as possible, produce results the same as those which would exist if the individual had been paid his wages at regular intervals.

"(4)   An eligible individual's weekly benefit amount shall be 1.25 percent of the total wages paid him in his base year. However, such amount shall not be less than the minimum, nor more than the maximum weekly benefit amount."

the installers did less than $1,000 worth of work for petitioner — some even did less than $100 worth of work for petitioner. This total absence of economic dependence, combined with the other evidence that petitioner's installers were not employes, leads us to conclude that these 50 or so installers were, as a matter of law, independent contractors within the meaning of ORS 657.040(2)(a).

The other ten or so installers in question worked fairly regularly for petitioner during the audit period, most doing about $1,000 or $2,000 worth of work each month. As we understand *Byrne Trucking,* these installers could reasonably be found to have been economically dependent upon petitioner despite their testimony that they could quickly replace the lost business if their relationship with petitioner terminated. However, no determination has yet been made about these installers applying the proper ORS 657.040(2)(a) criteria. We remand for that purpose.

Reversed in part; reversed and remanded in part.

**THORNTON, J.,** dissenting.

The majority concludes as a matter of law that approximately ten installers who "worked fairly regularly" for Pam's during the audit period were, or might be determined to be, employes within the meaning of the Unemployment Compensation Law, but that those who worked only occasionally or briefly were independent contractors. In my view, this distinction is untenable. Either all of the installers were employes within the meaning of ORS 657.040 or none was.

A remedial statute is to be construed liberally to effectuate its purposes. *Puget Sound B & D Co. v. SUCC,* 168 Or 614, 126 P2d 37 (1942) (Unemployment Compensation Law); *Boling v. Nork,* 232 Or 461, 375 P2d 548 (1968) (Workmen's Compensation Law); *Myers/Sherwood v. Tualatin RFD,* 5 Or App 142, 483 P2d 95 (1971) (Firemen's Civil Service Act).

The purpose of the Unemployment Compensation Law is to protect from economic hardship all persons actually employed in the labor market for the required number of weeks, not simply those who work "fairly regularly" for an employer, as the majority now holds.

The evidence offered at the hearing was that after Pam's receives the order for the carpeting, linoleum or drapes from the customers, Pam's contacts one or more installers until it finds one who is available. Pam's engages that installer, tells him when and where the job is to be done and when it is to be completed. In other words, Pam's schedules all the jobs. While the job is in progress Pam's owner would occasionally but not frequently drop by the job and inspect it. One installer testified that Pam's owner would come by about once a month. It is reasonable to infer from the testimony that one reason Pam's did not inspect more often was that it employed only those installers whom it had found through experience to be competent to do the jobs without the necessity of overseeing their work. Certainly, Pam's does not argue that it did not have the right to inspect any job if it chose to do so. Any complaints concerning the job were received by Pam's, who in turn forwarded the same to the installer for rectifying. As one installer testified, if the job is not done right, Pam's has the last word. Finally, Pam's retained the right to hire and fire. Installers hired by Pam's who did not perform were not rehired.

As our Supreme Court stated in *Kirkpatrick v. Peet,* 247 Or 204, 212, 428 P2d 405 (1967):

" * * * [I]n using the word 'employment' in the Unemployment Insurance Act the legislature did not intend to incorporate the common law test for determining the master-servant relationship. * * *" *Accord, Republic Dev. Co., Inc. v. Emp Div.,* 284 Or 431, 587 P2d 466 (1978).

In reference to Pam's contention that the installers are free from its direction and control, our Supreme Court has held that an individual's freedom from

[686]

control or direction is not established under ORS 657.040(1) if there is reserved to the user of his services the right to control or direct when, where, how much and in what way the individual performs those services. *Journal Pub. Co. v. State U. C. Com.,* 175 Or 627, 155 P2d 570 (1945); *Union Avenue Club v. Peet,* 249 Or 135, 437 P2d 730 (1968); *Dick v. Morgan,* 2 Or App 437, 468 P2d 544 (1970). This is so even though that right might not in some respects be exercised. It is not necessary that the person having the right to control exercise such right in every particular in order to bring the services within the coverage of the Unemployment Compensation Law. *Union Avenue Club v. Peet* and *Dick v. Morgan,* both *supra.*

Based upon my examination of this record, I submit that there is substantial evidence in the record to support the referee's finding that the installers were not free from the ultimate direction and control of Pam's in the performance of their work within the meaning of ORS 657.040(1) and the finding that the installers were not customarily engaged in an independently established business within the meaning of ORS 657.040(2)(a) and (b).

The evidence shows that Pam's still retains the ultimate authority to control where, when, how much and in what way the individual installer performs such services.

As to the finding that the installers were not customarily engaged in an independently established business within the meaning of ORS 657.040(2)(a) and (b), I point to the following evidence that supports this finding: Most if not all of the installers had no employes who actually performed installation work; none employed anyone to assist them with installations on any of Pam's jobs; none of the installers were recognized by the Department of Revenue as employers; none of the installers had any "risk capital" invested apart from their supplies such as tape,

fasteners and adhesives, a few tools, some installing equipment and a vehicle. None had employes except one who had an oral arrangement for help from his son. As to the seven who were supposed to have one or more employes, none was recognized by the Department of Employment as an employer. Those who testified generally agreed that theirs was basically a one-man operation which could not be sold as a going business to another person.

As the Supreme Court noted in *Kirkpatrick v. Peet, supra,* risk capital is capital invested for a profit where the investor assumes the risk of loss. Risk capital is money that is spent for material, labor costs and items such as subcontracts, the value of which could result in a monetary loss to the investor should the return be less than the amount invested.

This being the case, Pam's has not sustained its burden of proving that it is exempt under ORS 657.040 from payment of unemployment compensation tax on those individuals listed in the referee's "Second Reconsidered Decision." *Republic Dev. Co., Inc. v. Emp. Div.,* 284 Or 431, 587 P2d 466 (1978).

I would affirm.