Argued and submitted June 13,
affirmed in part; reversed in part August 11,
respondent's reconsideration denied September 18, petitioner's
reconsideration denied September 25, petitions for review
denied December 9, 1980 (290 Or 211)

# SHARP,
*Petitioner,*

*v.*

# EMPLOYMENT DIVISION,
*Respondent.*

## (No. 79-T-99, CA 16667)

615 P2d 374

Robert L. Ackerman, Springfield, argued the cause for petitioner. With him on the brief was Ackerman & DeWenter, Springfield.

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Petitioner appeals from a referee's decision ruling that certain persons who performed services for petitioner were petitioner's employes, rather than independent contractors, and that the petitioner was therefore liable for unemployment compensation tax payments for the period in question. We affirm in part and reverse in part.

The distinction between an employe and an independent contractor for purposes of unemployment insurance is found in ORS 657.040. That statute provides:

"Services performed by an individual for remuneration are deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the assistant director that:

"(1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(2)(a) Such individual customarily is engaged in an independently established business of the same nature as that involved in the contract of service; or

"(b) Such individual holds himself out as a contractor and employs one or more individuals to assist in the actual performance of services and who meets the following criteria shall be deemed to have an independently established business:

"(A) The individual customarily has two or more effective contracts.

"(B) The individual as a normal business practice utilizes separate telephone service, business cards and engages in such commercial advertising as is customary in operating similar businesses.

"(C) The individual is recognized by the Department of Revenue as an employer.

"(D) The individual furnishes substantially all of the equipment, tools and supplies necessary in carrying out his contractual obligations to his clients."

■ Petitioner has the burden of proving that the individuals she employed fit within the exemption of ORS 657.040. *Kirkpatrick v. Peet,* 247 Or 204, 213, 428 P2d 405 (1967). The referee found that all of the individuals in question were free from control or direction in the performance of their services for petitioner. Neither party questions this ruling. Petitioner thus meets the criterion of subsection (1) of ORS 657.040. As to the independent contract issue, petitioner concedes that this is not a subsection (2)(b) case. Therefore, our only inquiry in this case is whether each of the individuals employed by petitioner is customarily engaged in an independently established business as that term is used in ORS 657.040(2)(a).

■ The Supreme Court's opinion in *Kirkpatrick v. Peet, supra,* 247 Or at 212-214, sets forth the essence of the test of subsection (2)(a):

> "Our previous cases make it clear that in using the word 'employment' in the Unemployment Insurance Act the legislature did not intend to incorporate the common law test for determining the master-servant relationship. Rather, the test is to be found by looking at the purpose of the Act. That purpose is served only if the Act is construed broadly enough to include persons who, although independent contractors according to the common law test, are peculiarly subjected to the hazard of employment because of the nature of their occupation.
>
> "* * * * *
>
> "* * * We understand this part of the statute to mean that to exclude coverage it must be shown that the person engaged to perform services for another does so as an entrepreneur, *i.e.,* where the enterprise calls for the investment of risk capital with the prospect of reaping returns or suffering a loss in the venture, the employment of others, and ordinarily the performance of service for more than one person. * * *.
>
> "It is to be noted that the statute requires the occupation to be both 'independently established' and 'customarily' engaged in. This requirement is not met if the continued existence of the enterprise depends

upon its relationship with a particular employer. If there is such dependence, the person employed does not have the prospect of supporting himself in the pursuit of his occupation if the person employing him terminates the relationship. It was the purpose of the Unemployment Insurance Act to provide relief where there was this type of risk of unemployment." *See also Republic Dev. Co., Inc. v. Emp. Div.,* 284 Or 431, 587 P2d 466 (1978).

We turn now to an examination of the facts in light of the considerations set forth in *Kirkpatrick.* Petitioner is engaged in the sale of women's clothing and related items, including a line of back packs. Petitioner designs some of the clothing items and has them sewn by piece workers. The back packs are also sewn by such workers. Most of the persons affected by this appeal do piece work as seamstresses; a few performed other services for petitioner. For the purpose of this review, petitioner divides the individuals in question into two categories: those who performed work only for petitioner, and those who performed work for others as well as petitioner. The persons in the latter category are discussed individually.

I

We turn first to those persons who worked solely for petitioner. Fifty-eight persons are included in this category. They performed seamstress work for petitioner in their own homes. Petitioner furnished the patterns and the material, while the individual seamstress preshrunk the material in his or her own washer and dryer and supplied the thread and sewing machine. Each person was responsible for the maintenance of his or her own machine. The individual picked up the materials to be sewn at petitioner's store and returned the finished product. They were paid on a piece work basis and usually received their compensation upon delivery of the product. If a mistake was discovered in the product, the individual was asked to redo the item without added compensation.

All of these individuals worked alone. They worked in their own homes and did not advertise their services. They maintained no business phone and none operated under an assumed business name. Each person was free to work as little or as much as he or she desired; no restrictions were placed on working for others. Some worked as little as one week, earning $15 to $25 during the three year[1] period in question while others, such as a couple named Pritchard, worked on a regular basis, earning as much as $500 to $2,000 during a quarter period. Mr. Pritchard testified that fifty percent of his and his wife's income came from the work done for petitioner; the rest was from Social Security.

Forty-three of these persons signed contracts with the petitioner acknowledging that they were self-employed and that they were free to work when or how they chose. The contract provided that the seamstress would preshrink the fabric, provide the thread, keep petitioner informed as to their desired workload and pick up supplies and deliver the finished project within one week of the order. Petitioner agreed to provide materials and pay, in most instances, upon delivery. The remainder of the seamstresses did not sign such contracts but petitioner's manager claims that the same terms were discussed with them.

With respect to these individuals who worked solely for petitioner, the referee concluded that:

"As can be seen from the evidence in the instant matter, not one of the individuals whose services are in question have anything remotely resembling 'risk capital' invested in their occupations. They are but ordinary craftsmen with but the usual tools and equipment thereof. None of them both employed anyone and performed their services for more than just [petitioner] during the time their names were listed on the deficiency assessment. None of them were

_____

[1] The audit covered the period of time beginning with the third quarter of 1976 and ending with the second quarter of 1979.

themselves employers or what could be called an 'entrepreneur' within the court's understanding and definition of the term in the *Kirkpatrick* case and, consequently, none of them can be found to have been engaged in what subsection (2)(a) of ORS 657.040 terms 'an independently established business.' "

■ We conclude that, as to those persons who worked solely for petitioner, the referee's decision denying exemption properly applied the relevant criteria and is justified by substantial evidence in the record. ORS 657.684 and ORS 183.482(8)(c). Although no one factor is conclusive, when taken together the facts generally indicate that the individuals in question were employes and not independent contractors. None of these people employed others. None of them had a separate business establishment or a separate business phone. They did not advertise their services or have business cards. Although they furnished their own sewing machines, they furnished no materials other than such things as thread and needles. Lastly, none of these individuals had a business he or she could sell for anything beyond the value of her sewing machine. *See Republic Dev. Co., Inc. v. Emp. Div.,* *supra,* 284 Or at 440-441.

■ The contract between petitioner and these individuals, stating that they were self-employed, does not affect our decision. We look to the facts of each case and not to any designation the parties may have chosen to describe their relationship. *Byrne Trucking, Inc. v. Emp. Div.,* 284 Or 443, 446, 587 P2d 473 (1978).

II

We turn now to those persons who performed services for others besides petitioner. They will be discussed individually.

(1) Beverly Hunnicutt sewed women's bikinis for petitioner at her home. She was paid at a piece work rate. Ms. Hunnicutt had her own supplies and equipment. Her customers, one of whom was petitioner, supplied the materials. Ms. Hunnicutt

testified that she had five or six other customers during the time she worked for petitioner. She had no business cards and did not maintain a separate business phone, but she did advertise her services as a seamstress in two local newspapers. Ms. Hunnicutt did not have anyone to assist her in her work.

(2)   Patricia Jerome sewed turtlenecks and other clothing items for petitioner. She, too, worked at home with the materials supplied by petitioner. Ms. Jerome had both a home machine and an industrial model. She sewed for about three or four customers per week besides petitioner. Ms. Jerome had a business card with the name "My Glad Rags," and advertised her services through four fabric shops which maintained books with names of commercial seamstressses. Ms. Jerome did not employ anyone to assist her in her work. She was paid on a piece work rate set by petitioner after she had done a test run to determine the amount of time a given article would take to sew. She signed an agreement with petitioner stating that she was self-employed. During the time in question, at least half of her income was earned from work for petitioner.

. (3)   Lynn Peterson did graphics work for petitioner in her own home where she had a desk and drafting table set up for that purpose. Ms. Peterson advertised her services as an artist through cards, flyers and stationary and a published book on graphics. Ms. Peterson had a number of clients and, during the time she performed services for petitioner, had work in progress for four or five other persons. She too, worked alone. She testified that she thought of herself as an independent contractor. She admitted that she did not have a going business to sell but she did feel that she had built up her own good will and reputation over the years.

(4)   Bruce Beers-Green is a carpenter who did repair work on petitioner's home and on her shop. He

is a member of a builders' cooperative which functioned as a job pool for a number of people. He worked alone, supplied all of his own carpentry tools and advertised his services through a business card and in local newspapers. He was paid directly by petitioner and not through the cooperative. His personal phone number at the time was the same as the number for the cooperative.

(5) Richard Holland is a contractor who installed a false ceiling in petitioner's store. He has a builder's license, a federal employer identification number and does business under an assumed business name.

■ Although the factors regarding these individuals do not all point in the same direction, we conclude that, for purposes of the unemployment law, four of them, Hunnicutt, Peterson, Beers-Green and Holland, are independent contractors. All of these people worked for others during the time in question and most of them advertised their services in some way; one operated under an assumed business name. In addition, none of these people were economically dependent on the petitioner. This factor, which the Supreme Court discusses in *Kirkpatrick* as a relevant criteria,, was not discussed by the referee. In a recent decision, *Pam's Carpet Service, Inc. v. Employment Division,* 46 Or App 675, 613 P2d 52 (1980), this court concluded that, while the Supreme Court's decision in *Byrne Trucking, Inc. v. Emp. Div., supra,* 284 Or at 447, may cast some doubt on the continued significance of the dependency criteria, that criteria is still relevant in at least one respect.

"ORS 657.150[2] requires that unemployment compensation claimants have earned certain minimum

---

[2] ORS 657.150, in part, provides:

"(1) After June 30, 1959, an individual shall be paid benefits during his benefit year in an amount which is to be determined by

[741]

amounts in order to be eligible for benefits. Stated differently, a person who earns less than the required minimum amounts is not eligible for the protection the Supreme Court mentioned in *Byrne Trucking.* It seems to us that an alleged employe not eligible for unemployment compensation because of ORS 657.150 is rather clearly not economically dependent upon his alleged employer." 46 Or App at 683-684.

Over the three year, thirty-six month audit period Beverly Hunnicutt and Lynn Peterson worked two weeks each earning a total of $110.57 and $42 respectively; Bruce Beers-Green worked for ten weeks earning $883.50;[3] Richard Holland worked for a fifteen week period earning $1,400. This demonstrated lack of economic dependence, together with the other

taking into account his weeks of work in subject employment in his base year as provided in this section.

"(2) To qualify for benefits an individual must have had at least 18 weeks of work with an average of $20 per week in subject employment in his base year. However, to qualify for benefits, his total base year wages must be $700 or more, and in addition thereto he must have earned wages equal to six times his weekly benefit amount in employment, whether or not in covered employment, for service performed subsequent to the beginning of a preceding benefit year if benefits were paid to him in such preceding benefit year.

"(3) If the wages paid to an individual are not based upon a fixed period of time or if his wages are paid at irregular intervals or in such manner as not to extend regularly over the period of employment for the purposes of subsections (2) to (5) of this section, his wages shall be allocated in accordance with regulations prescribed by the assistant director. Such regulations shall in so far as possible, produce results the same as those which would exist if the individual had been paid his wages at regular intervals."

[3] Mr. Beers-Greene also earned an additional $126.32 from petitioner. The referee found, however, that:

"The services of Bruce Beers-Greene were, of course, not for plaintiff but for Ms. Proudfoot personally in remodeling her home. Consequently, such service would be excluded under the provisions of subsection (2) of ORS 657.050 unless: '* * * performed in each of 18 weeks in a calendar year or total payroll for such services is $225 or more during any calendar quarter.' Mr. Beers-Greene did not, of course, work 18 weeks or more for plaintiff and the first calendar quarter that he worked his earnings were less than $225. Therefore, his services would not be in subject employment until the fourth calendar quarter of 1976 when he received $330.30"

evidence, leads us to conclude that these four individuals were not employes for the purpose of the unemployment law.[4] The referee's decision with respect to these four is reversed.

■ Patricia Jerome is in a special category. She worked steadily for the petitioner during the entire time in question, earning substantial amounts. She testifed that half of her income came from petitioner. Under the test set forth in *Pam's Carpet,* she was economically dependent on the petitioner. Ms. Jerome is not as a matter of law an entrepreneur as that term is used in *Kirkpatrick, supra.* She did not employ others to assist her and she did not have a going enterprise which involved the investment of risk capital. Her loss or gain depended solely on the time it took her to sew an individual item. It is true that she worked for others and advertised her services. However, on balance, we hold there is substantial evidence to support the referee's decision with respect to her.

Affirmed in part and reversed in part.

---

[4] The referee did not consider the dependency criteria in reference to those individuals who worked solely for petitioner either. However, that criteria was not relevant under their circumstances. We made the following distinction in *Pam's Carpet Service, Inc. v. Employment Division, supra:*

"We are aware that persons who are obviously employes, and obviously not independent contractors, can earn less than the minimum amounts specified in ORS 657.150 if, for example, they only work for an employer for a few weeks. Such persons should, of course, have all wages earned during their base years added together to determine eligibility. But when a person is not obviously an employe, and a colorable claim is made that he is an independent contractor, we think that *de minimis* compensation paid to the individual in question, *i.e.,* less than the amounts specified in ORS 657.150, tips the scales strongly toward a finding of lack of economic dependency, which in turn requires the conclusion that the individual is an independent contractor." 46 Or App at 684.