Argued and submitted October 26, 1981, reversed and
remanded with directions March 22, 1982

The CARPET MILL & LIGHTHOUSE,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION,
*Respondent.*

(No. 79-T-102, CA A21041)

642 P2d 354

Jeffery D. Herman, Springfield, argued the cause for petitioner. With him on the brief was Wiswall, Svoboda, Thorp & Dennett, P. C., Springfield.

William F. Gary, Solicitor General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Rudolph S. Westerband, Assistant Attorney General, Salem.

Before Gillette, Presiding Judge, Young, Judge, and Roberts, Judge Pro Tempore.

YOUNG, J.

## YOUNG, J.

Petitioner appeals from a referee's decision ruling that 14 persons who installed carpet and other products for petitioner were employes, rather than independent contractors, and that petitioner was therefore liable for unemployment compensation tax payments for the period in question, April 1, 1978, through June 30, 1979. We remand for further proceedings.

The distinction between an employe and independent contractor, for these purposes, is expressed in ORS 657.040.

"Services performed by an individual for remuneration are deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the assistant director that:

"(1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(2)(a) Such individual customarily is engaged in an independently established business of the same nature as that involved in the contract of service; or

"(b) Such individual holds himself out as a contractor and employs one or more individuals to assist in the actual performance of services and who meets the following criteria shall be deemed to have an independently established business:

"(A) The individual customarily has two or more effective contracts.

"(B) The individual as a normal business practice utilizes separate telephone service, business cards and engages in such commercial advertising as is customary in operating similar businesses.

"(C) The individual is recognized by the Department of Revenue as an employer.

"(D) The individual furnishes substantially all of the equipment, tools and supplies necessary in carrying out his contractual obligations to his clients."

■ Petitioner sells carpet, other floor covering, counter-tops and lighting fixtures. He entered into contracts with the individuals in question for the purpose of installing these goods. Petitioner contends that the installers are independent contractors under ORS 657.040(1) and (2)(a). While it is not argued that any of the installers qualify as

independent contractors under 657.040(2) *(b)*, the elements listed in that subsection are relevant to the determination of an independently established business within the meaning of 657.040(2) *(a)*. *Republic Dev. Co., Inc. v. Emp. Div.*, 284 Or 431, 438, 587 P2d 466 (1978); *Pam's Carpet Service v. Employment Div.*, 46 Or App 675, 682, 613 P2d 52, *rev den* 289 Or 677 (1980). Petitioner has the burden of proving that the individuals employed come within the exemptions of ORS 657.040. *Kirkpatrick v. Peet*, 247 Or 204, 213, 428 P2d 405 (1967).

The referee found that all the installers in question were free from control or direction of the petitioner and that the first requirement for exemption, ORS 657.040(1), had been met. The referee concluded, however, that petitioner failed to show that the individuals employed were customarily engaged in an independently established business as required by ORS 657.040(2)(a). The question on appeal is whether the referee's findings were supported by substantial evidence and whether his conclusion denying exemption was the result of a proper application of the relevant criteria.

The 14 installers shared the following characteristics: each supplied his own vehicle and equipment, which included trowels, barscribes, knives, floor stretchers, underscribes, floor sanders, dust bags, adhesives, seam sealer kits and hydraulic equipment; each was required to obtain, at his own expense, a performance bond and insurance and to be registered with the Builders' Board; petitioner furnished the customers[1] and materials to be installed; the installers were called to work on an *ad hoc* basis and billed the petitioner for services performed; they were liable to the customers for improper installation.

From this point on, each installer's relationship with the petitioner varied. The referee employed the following factors in a "checklist" format in order to analyze the nature of each individual's enterprise: a) had two or more effective contracts; b) had employes; c) invested risk capital; d) held self out as contractor; e) used separate telephone service; f) used business cards; g) engaged in

---

[1] The only exception appears to be Jack Ferrin.

customary commercial advertising; h) was recognized by the Department of Revenue; and i) furnished substantially all of the tools and supplies. The referee designated each factor with either a "yes," "no," or "unknown" answer. The referee's definition of "unknown" was "that there was no evidence in the record upon which a positive or negative finding could be made." The referee's finding of "unknown" in several instances is refuted by the record.[2]

We would not necessarily overturn negative findings, for the referee could have doubted the credibility of the witnesses. However, in order to support a finding of "unknown," the record should contain *no* evidence upon which any finding could be made, given the referee's definition of "unknown."

We turn to the question of whether the referee applied the proper criteria in interpreting ORS 657.040(2). It is clear from the referee's decision that he placed great emphasis on the investment of risk captial. The decision states:

"As can be seen from the evidence in the instant matter, not one of the individuals whose services are in question

---

[2] The referee found it was "unknown" whether:

(1) Jack Ferrin used business cards or commercially advertised. There was evidence however, that he used business cards and that he sent business cards in conjunction with "mailings" to advertise his services to contractors.

(2) Rick Jones held himself out as contractor, utilized business cards, and furnished substantially all his own tools and equipment. There was evidence to support a positive finding on each factor.

(3) Roger Kirkendall used business cards or a separate telephone service. There was evidence on each of those factors.

(4) Dave Brown had two or more effective contracts or held himself out as a contractor. There was evidence to support a positive finding on both factors.

(5) Darrell Berens held himself out as a contractor or utilized a separate telephone service. There was evidence he was a registered contractor (see ORS 701.055(5)) and had separate telephone service.

(6) Autry Bennett engaged in advertising. There was evidence he did advertise in the newspaper.

(7) Bob Brady had separate telephone service. Evidence indicated that he did.

(8) Frank Kruit utilized separate telephone service and furnished his own equipment and tools. Evidence supports a postive finding on both factors.

(9) Bob Reed held himself out as a contractor. There was evidence he was registered, used a business name and advertised.

have anything remotely resembling 'risk capital' invested in their occupations. They are at the most skilled craftsmen with the usual tools and equipment of craftsmen. Only five of 14 installers had employes of their own. * * * None of the installers are what could be called an 'entrepreneur' within the court's understanding and definition of the term in the *Kirkpatrick* case and, consequently, none of them can be found to have been engaged in what subsection (2)(a) of ORS 657.040 terms 'an independently established business.' "

■    It appears that the referee considered the investment of risk captial *essential* to a section (2)(a) exemption. That is incorrect. As we stated in *Pam's Carpet Service, Inc. v. Employment Div., supra,* 46 Or App at 682:

"[T]he quantity and quality of investment in a business is relevant to whether it is independently established, but is not necessarily controlling."

An appropriate inquiry is whether the enterprise in question would normally call for an investment of risk capital. *See Kirkpatrick v. Peet, supra; Sharp v. Employment Division,* 47 Or App 733, 615 P2d 374, *rev den* 290 Or 211 (1980).

The installers invested in specialized equipment, as well as vehicles, telephones, business cards, stationery and billing invoices. Each installer was required to be bonded and licensed. In addition, a number of installers had labor costs for their own employes. While the foregoing may not qualify as "risk capital" in the sense that it does not amount to a business that could be sold beyond the value of the equipment used, it is commensurate in "quantity and quality" to the investment necessary to the business of the installers here. To require the kind of risk capital alluded to by the referee would effectively prevent anyone in the business of selling his services from attaining independent contractor status.

■    We also find that the referee misinterpreted the economic independency requirement articulated in *Pam's Carpet Service, Inc. v. Employment Div., supra.* The referee stated that all the installers in question received monies from the petitioner in excess of the minimum amount required to be eligible for unemployment compensation

benefits[3] and that they were, therefore, "obviously economically dependent installers." Using the statutory requirement of $700 as the sole indicator of economic dependency is not correct. While compensation in amounts less than the minimum specified in ORS 657.150 may tip the scale toward lack of ecomonic independency once a colorable claim of being an independent contractor has been made, the opposite does not necessarily follow. An individual may receive money in excess of that required from one contractor but that amount may represent only a small percentage of his total income. *See Sharp v. Employment Division, supra,* 47 Or App at 743. While the ability to replace income that is lost from terminated employment may be irrelevant to the question of economic independence, the lack of a need to replace that business because it represents a small portion of one's business is pertinent. *See Byrne Trucking, Inc. v. Emp. Div.,* 284 Or 443, 447, 587 P2d 473 (1978).

Reversed and remanded for reconsideration under a proper application of the ORS 657.040(2)(a) criteria.

---

[3] ORS 657.150 provides in part:

"(2) To qualify for benefits an individual must have had at least 18 weeks of work with an average of $20 per week in subject employment in his base year. However, to qualify for benefits, his total base year wages must be $700 or more, and in addition thereto he must have earned wages equal to six times his weekly benefit amount in employment, whether or not in covered employment, for service performed subsequent to the beginning of a preceding benefit year if benefits were paid to him in such preceding benefit year."