Argued and submitted March 26, reversed and remanded December 22, 1982

PAM'S CARPET SERVICE, INC.,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION,
*Respondent.*

(No. 78-T-9, CA A21189)

656 P2d 340

Richard C. Hunt, and Spears, Lubersky, Campbell & Bledsoe, Portland, filed the brief for petitioner.

Jan Peter Londahl, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Petitioner appeals from a referee's decision that 11 persons who installed carpet and other products for petitioner over a two-year, nine-month period were petitioner's employes, not independent contractors, and that therefore petitioner was liable for unemployment compensation taxes on the amounts paid to the installers during that period.

This case is before us for the fourth time. Its history illustrates the development of this area of the law and defines the issues now before us.

In March, 1978, a notice of deficiency assessment was served on petitioner, alleging that petitioner had failed to make unemployment compensation tax payments for approximately 60 of its installers of carpet and other products for the audit period of 1975, 1976 and the first three quarters of 1977. At a hearing before a referee and throughout these proceedings, petitioner has argued that the installers were independent contractors, rather than employes, under ORS 657.040(1) and (2)(a), and that therefore petitioner was not liable for tax payments. ORS 657.040 provides:

"Services performed by an individual for remuneration are deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the assistant director that:

"(1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under a contract of service and in fact; and

"(2)(a) Such individual customarily is engaged in an independently established business of the same nature as that involved in the contract of service; or

"(b) Such individual holds himself or herself out as a contractor and employs one or more individuals to assist in the actual performance of services and who meets the following criteria shall be deemed to have an independently established business:

"(A) The individual customarily has two or more effective contracts.

"(B) The individual as a normal business practice utilizes separate telephone service, business cards and

engages in such commercial advertising as is customary in operating similar businesses.

"(C) The individual is recognized by the Department of Revenue as an employer.

"(D) The individual furnishes substantially all of the equipment, tools and supplies necessary in carrying out the contractual obligations."

The referee issued a decision affirming the notice of deficiency assessment and finding that petitioner had failed to establish that the installers were independent contractors. Petitioner appealed.

The referee's decision was based on *Republic Dev. Co., Inc. v. Emp. Div.,* 32 Or App 263, 574 P2d 660 (1978). After the referee had entered his decision, the Supreme Court decided the companion cases of *Republic Dev. Co., Inc. v. Emp. Div.,* 284 Or 431, 587 P2d 466 (1978), and *Byrne Trucking, Inc. v. Emp. Div.,* 284 Or 443, 587 P2d 473 (1978), which clarified the factors relevant to deciding whether an "individual customarily is engaged in an independently established business" under ORS 657.040(2)(a). We remanded *Pam's Carpet Service v. Emp. Div.,* 39 Or App 203, 591 P2d 427 (1979), for reconsideration in light of the Supreme Court's opinion in *Republic Dev. Co.*

In *Republic Dev. Co.,* the Supreme Court stated that the purpose of the Unemployment Insurance Act required that "employment" be considered broad enough to include persons who, although independent contractors according to the common law test for determining a master-servant relationship, were still particularly subject to the hazard of unemployment because of the nature of their occupation. Considering that purpose, the court defined the essence of the subsection (2)(a) test as follows:

" "* * * We understand this part of the statute to mean that to exclude coverage it must be shown that the person engaged to perform services for another does so as an entrepreneur, i.e., where the enterprise calls for the investment of risk capital with the prospect of reaping returns or suffering a loss in the venture, the employment of others, and ordinarily the performance of service for more than one person. * * *

" 'It is to be noted that the statute requires the occupation to be both "independently established" and "customarily" engaged in. This requirement is not met if the continued existence of the enterprise depends upon its relationship with a particular employer. If there is such dependence, the person employed does not have the prospect of supporting himself in the pursuit of his occupation if the person employing him terminates the relationship. * * *' " 284 Or at 439-40. (Quoting *Kirkpatrick v. Peet*, 247 Or 204, 213-14, 428 P2d 405 (1967).)

The court also said that the factors listed in subsection (2)(b) (quoted above) and the factors listed in the Federal Register and footnoted in *Kirkpatrick* (quoted below) may be relevant to the subsection (2)(a) test.

" '* * * The typical independent contractor has a separate establishment distinct from the premises of the person for whom the services are performed; he performs services under an agreement to complete a specific 'job' or piece of work for a total remuneration or price agreed on in advance; at times and places and under conditions fixed by him, he offers his services to a public or customers of his own selection rather than a single person; neither he nor the person for whom the services are performed has the right to terminate the contract except for cause; he may delegate the performance of the services to helpers; he performs the services in or under his own name or trade name rather than in or under that of the person for whom the services are performed; the performance of the services supports or affects his own good will rather than that of the person for whom the services are performed; and he has a going business which he may sell to another.' 12 Fed.Reg. 7966 (Nov. 27, 1974)." 247 Or at 214 n 4.

On remand, the referee issued a "Reconsidered Referee Decision," again affirming the notice of deficiency assessment. Petitioner appealed, and at oral argument the parties agreed to another remand for additional findings. The referee then issued a "Second Reconsidered Referee Decision," again finding that petitioner had failed to establish that the installers were independent contractors. That decision was the subject matter of *Pam's Carpet Service v. Employment Div.*, 46 Or App 675, 613 P2d 52 (1980), *rev den* 289 Or 677 (1980) (hereinafter *Pam's Carpet III*). We summarized the facts as follows:

"Petitioner sells carpets, hard-surface coverings (tile, formica, etc.) and draperies. Most of petitioner's customers pay a price for such products that includes installation. Petitioner then makes ad hoc arrangements in each case for installation by contracting with installers that it believes to be independent contractors.

"Each installer has his own truck and furnishes his own tools, equipment and installation supplies. Petitioner furnishes only the customer's order and the material to be installed. Many of the installers here in question use an assumed business name and have business cards. All of the installers bill petitioner once or twice a month for installation work performed. All of the installers are free to and do, in fact, also work for petitioner's competitors. Some of the installers compete directly with petitioner by also selling carpet." 46 Or App at 680.

We held, contrary to the referee, that petitioner had established that all of the installers were free from its direction and control under ORS 657.040(1). We also held that the referee had erred in his analysis of whether the installers had engaged in an independently established business within the meaning of ORS 657.040(2)(a). The referee improperly treated three factors as essential to an independently established business: investment of risk capital, employment of others and recognition as an employer by the Department of Revenue. We noted that no single factor had ever been given conclusive significance in any (2)(a) case. Further, the referee improperly ignored one major factor identified in *Republic Dev. Co.:* whether the purported employe was economically dependent on the alleged employer. We concluded that the installers who did less than $1,000 worth of work for petitioner during the audit period were not economically dependent on petitioner. Because of the lack of economic dependency and the other evidence indicating that these installers were not employes, we held, as a matter of law, that they had independently established businesses under ORS 657.040(2)(a).

Eleven installers worked fairly regularly for petitioner during the audit period, doing about $1,000 or $2,000 worth of work each month: Cotton's Carpet, Z Best Carpets, D.J. Carpet Service, Allison's Carpet, V.J. Carpet Service, D. Meader, Harold's Carpet Service, B. Segal, A.

Wymer, P. Korish and John Mulligan Interiors. As to those, we remanded.

In his "Revised Referee Decision On Remand," which is the subject of this appeal, the referee decided that the 11 remaining installers were not engaged in an independently established business and that therefore petitioner was liable for unemployment compensation tax payments. The referee based his decision on the following factors:

(1) the installers had not invested risk capital with the prospect of suffering a loss in the venture;

(2) they were economically dependent on petitioner;

(3) they did not employ anyone on a fulltime basis;

(4) they were not recognized as employers by the Department of Revenue;

(5) they did not have a business location separate from their residence; and

(6) they had no business phone separate from their home phone.

Petitioner argues that the referee erred in his application of the evidence to the relevant subsection (2)(a) factors. We hold that the referee erred as to two of the major factors: the investment of risk capital and economic dependency.

■ Petitioner has the burden to prove that the installers are engaged in independently established businesses under ORS 657.040(2)(a). *Kirkpatrick v. Peet, supra,* 247 Or at 213. To determine properly whether petitioner carried its burden involves a two-step process. First, the referee applies the evidence introduced by petitioner and the Employment Division to the relevant factors. If only one of the parties produced evidence under a given factor, the referee decides whether it is sufficient, credible evidence to support a finding that the party established the factor in support of its position concerning the installer's independent business status. If both parties produce credible

evidence on a factor, the referee weighs all the relevant evidence to determine whether the petitioner, Employment Division, or neither of them, prevails on that factor. Second, considering only those factors that the referee found in favor of one or the other of the parties, he decides whether petitioner has carried its burden to prove that the installers were engaged in independently established businesses.

■ Although the uncontroverted evidence established that each of the installers invested in specialized tools, equipment and a vehicle that were all necessary to allow them to perform their services, the referee concluded that "none of them invested their own money in anything that could have been considered to be 'risk capital' in any business venture." In *The Carpet Mill v. Emp. Div.,* 56 Or App 552, 642 P2d 354 (1982), the referee had decided that carpet installers, who had invested in equipment similar to that of the installers in the case at bar, had not invested in risk capital but merely in the tools of their trade. We said:

> "* * * While the foregoing may not qualify as 'risk capital' in the sense that it does not amount to a business that could be sold beyond the value of the equipment used, it is commensurate in 'quantity and quality' to the investment necessary to the business of the installers here. To require the kind of risk capital alluded to by the referee would effectively prevent anyone in the business of selling his services from attaining independent contractor status." 56 Or App at 557.

In the case at bar, the referee also stated that the "only loss that the installer could suffer was not a monetary loss but only the loss of his time." Undisputed evidence established, however, that the installers were responsible for correcting their installation errors and were financially responsible for any damage they caused to the carpet. Further, the quality of their services affected their reputation among businesses that contracted with them, which in turn affected the number of contracts they received and, therefore, the level of their profits. Loss of business through poor workmanship would diminish the value to them of their investment in specialized equipment. Consequently, we conclude that the installers invested risk capital in their businesses. *See also, Byrne Trucking, Inc. v. Emp. Div., supra; Teton Industries v. Emp. Div.,* 26 Or App 725, 554 P2d 580 (1976), *rev den* 276 Or 873 (1976).

■      The referee also erred in his application of the economic dependency factor as defined by the Supreme Court in *Byrne Trucking* and this court in *Pam's Carpet III.* In *Byrne Trucking,* the court held that truck operators who entered contracts to haul exclusively for the petitioner were employes within the meaning of ORS 657.040(2)(a). In deciding that the operators were economically dependent on petitioner, the court said:

> "* * * The operators' testimony that if they were terminated by petitioner they would make a similar arrangement with another trucking firm is irrelevant. Any workman who loses his job can go to work for someone else — providing there is another job for him to go to. Unemployment compensation is designed to provide protection during those times when an arrangement cannot be made with another firm providing similar services because there is insufficient demand for similar services." 284 Or at 447.

The operators' testimony was irrelevant, because it apparently addressed only what the operators would have *attempted* to do if terminated by petitioner. Their testimony did not address whether any other firms had *in fact* offered similar arrangements during the audit period, which is clearly relevant to economic dependency.

In this case, all of the installers who did $1,000 or $2,000 worth of work per month for petitioner during portions of the audit period also performed services for others. Six testified that if their relationship with petitioner had terminated, they could have quickly replaced the lost business. With respect to this testimony, we said in *Pam's Carpet III:*

> "* * * As we understand *Byrne Trucking,* these installers could reasonably be found to have been economically dependent upon petitioner despite their testimony that they could quickly replace the lost business if their relationship with petitioner terminated. However, no determination has yet been made about these installers applying the proper ORS 657.040(2)(a) criteria. We remand for that purpose." 46 Or App at 685.

No additional evidence was taken after our decision in *Pam's Carpet III.* The Employment Division argues that, because the referee considered the same record on remand as we considered in *Pam's Carpet III,* the language

quoted above constituted a judicial finding establishing for the purposes of the remand that the referee's conclusion that the installers were economically dependent on petitioner was reasonable. The Employment Division has misinterpreted our statements. We concluded only that the installers' conclusory statements that they could replace the lost business, while relevant, was insufficient, without other supporting testimony, to establish that they were *not* economically dependent on petitioner. However, other evidence did support their general conclusion. Six testified that they regularly turned down contract offers from other firms during the audit period. Two testified that shortly after the audit period they ceased performing services for petitioner and were immediately fully employed performing contracts for other firms.

In his "Revised Referee Decision On Remand," the referee concluded that it was "beyond question" that the installers were economically dependent on petitioner. The referee apparently based this conclusion solely on his finding that petitioner was the "chief if not sole" source of business for "each of the 11 carpet layers" during the audit period.

The referee erred with respect to the six installers who testified at the hearing: P. Korish, Harold's Carpet Service, Allison's Carpet, D.J. Carpet Service, Z Best Carpets and V.J. Carpet Service. Although they testified that petitioner supplied 60 percent to 95 percent of the business they had accepted, those installers also testified that they had regularly turned down contract offers from other firms during the audit period. Further, P. Korish and Harold's Carpet Service testified that they had ceased performing services for petitioner with no loss of business shortly after the audit period. The "Revised Referee Decision on Remand" lacked any mention of the relevant evidence; therefore, we conclude that the referee failed to consider it. The referee erred by failing to consider all of the evidence relevant to whether those six installers were economically dependent on petitioner.

With respect to the five installers who did not testify, the referee's finding that petitioner was their "chief if not sole" source of business was supported by the

evidence. The Employment Division introduced credible evidence of the amounts petitioner paid to them during portions of the audit period. Petitioner produced no evidence of the amounts, if any, that they had received from other firms. Therefore, the referee properly concluded that those installers were economically dependent on petitioner.

We remand this case for the fourth time. With respect to the six installers who testified at the hearing, the referee must first determine whether they were economically dependent on petitioner, considering all the relevant evidence. In light of that determination and our holding that they invested risk capital, the referee must then decide whether he should change his conclusion that those installers were not engaged in an independently established business. As to the other five, the referee must decide whether our holding that they invested risk capital changes his conclusion concerning their independent business status.

Reversed and remanded for reconsideration.