Argued and submitted November 22, affirmed in part,
reversed in part and remanded May 11, 1983

The PONDEROSA INN, INC.,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION,
*Respondent.*

(81-T-50; CA A23977)

663 P2d 1291

Michael M. Ratoza, Portland, argued the cause for petitioner. With him on the briefs was Gary M. Rae, Portland.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief

were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

YOUNG, J.

## YOUNG, J.

Petitioner appeals from an order of the Employment Division (Division) holding it liable for unemployment compensation taxes for 1978, 1979 and 1980, because of omissions in its taxable payroll of certain individuals and musical groups determined by the Division to have been employes of petitioner. We affirm in part and reverse in part.

A Notice of Deficiency Assessment alleged that petitioner omitted 16 individuals and musical groups from its payroll records. Petitioner conceded that three of the individuals were employes but contended that the remaining 13 were independent contractors under ORS 657.040. A referee determined that those 13 were employes, concluding that petitioner had failed to prove that any of the 13 were "free from control or direction" of petitioner, ORS 657.040(1), or that any of them "customarily is engaged in an independently established business." ORS 657.040(2)(a).

Petitioner contends that the Division's order is based on an erroneous interpretation of the law and that it is not supported by substantial evidence. However, petitioner does not point to any of the referee's findings of fact as being unsupported by evidence in the record. Petitioner's argument is that the Division erroneously interpreted the law in concluding that the various groups and individuals were employes rather than independent contractors.

We review pursuant to ORS 183.482(8). Whether an individual is an employe or an independent contractor is a question of law. In *Baker v. Cameron,* 240 Or 354, 401 P2d 691 (1965), the court held that

"* * * the Commissioner's decision is the determination of a question of law and, therefore, independent judgment can be exercised upon judicial review. Despite this power, the decision of the administrative agency in this particular instance should be given some consideration as the answer to this question of law is in some degree dependent upon the general purpose behind the entire principle of unemployment insurance, a subject in which the Commissioner should have some expertise." 240 Or at 360. (Citations omitted.)

Although *Baker* was decided before the statute was amended by Or Laws 1971, ch 734, §§ 31 and 94, we believe that description of our scope of review still to be appropriate.

■       Petitioner has the burden to prove that the individuals named in the deficiency assessment are not employes under the Act. *Republic Dev. Co., Inc. v. Emp. Div.,* 284 Or 431, 587 P2d 466 (1978); *The Carpet Mill v. Emp. Div.,* 56 Or App 552, 642 P2d 354 (1982). ORS 657.040 provides:

> "Services performed by an individual for remuneration are deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the assistant director that:

> "(1)   Such individual has been and will continue to be free from control or direction over the performance of such services, both under a contract of service and in fact; *and*

> "(2)(a) Such individual customarily is engaged in an independently established business of the same nature as that involved in the contract of service; *or*

> "(b)   Such individual holds himself or herself out as a contractor and employs one or more individuals to assist in the actual performance of services and who meets the following criteria shall be deemed to have an independently established business:

> "(A)   The individual customarily has two or more effective contracts.

> "(B)   The individual as a normal business practice utiliizes separate telephone service, business cards and engages in such commercial advertising as is customary in operating similar businesses.

> "(C)   The individual is recognized by the Department of Revenue as an employer.

> "(D)   The individual furnishes substantially all of the equipment, tools and supplies necessary in carrying out his contractual obligations.

> "* * * * *." (Emphasis supplied.)

Petitioner relies on ORS 657.040(2)(a). Although subsections (2)(a) and (2)(b) provide alternative bases for finding that an individual is an independent contractor, it has been held that the factors specified in subsection (2)(b) may also be consid-

ered in an inquiry under subsection (2)(a). *Republic Dev. Co., v. Emp. Div., supra; The Carpet Mill v. Emp. Div., supra.*

■ We first consider the musical groups. The referee found that petitioner had failed to prove that any of the six groups were free from petitioner's control or direction or that any of the six "customarily is engaged in an independently established business." Petitioner's manager, David Hanson, testified that, as to all of the groups, he dealt exclusively with the leaders of the groups, which usually consisted of four musicians. The leader was responsible for providing the musicians; Hanson testified that he did not concern himself with who the musicians were. The groups were hired to perform on Friday and Saturday nights from 9 p.m. until 2 a.m. They provided their own instruments and sound equipment. They transported their equipment and set it up in petitioner's lounge. Hanson paid the leader at the end of the Saturday night performance. He told the leaders of the groups that he wanted them to play approximately 80 percent country and western music and that the remaining 20 percent could be requests from the audience or whatever the leader chose. He also asked that they not play so loud that patrons sitting at the nearest tables would be unable to carry on a conversation.

The Division contends that the fact that petitioner controlled the time and place the music was performed, required that the volume be controlled and asked that 80 percent of the music be country and western show that petitioner exercised, or had the right to exercise, control or direction over the groups' performance. We conclude, however, that the referee erred in determining that the musical groups were not free from petitioner's control or direction. As we said in *Pam's Carpet Service v. Employment Div.,* 46 Or App 675, 613 P2d 52, *rev den* 289 Or 677 (1980), the right to control is a matter of degree. In determining where on the scale of control versus freedom from control a particular individual (or group) falls, we will not substitute our judgment for that of the referee if either conclusion would be appropriate under the statute. However, we believe that as a matter of law petitioner has shown that the musicians were free from the control or direction contemplated by the statute.

■ As to whether petitioner has established that each group "customarily is engaged in an independently established business of the same nature as that involved in the contract of

service," the referee could correctly conclude that petitioner had failed to meet its burden of proof as to four of the groups. The only evidence regarding The Country Mavericks, The Roger Keller Band, Melody Three and Country Squire was the testimony of Hanson that they had played at other restaurants or hotels in the area before or after their engagement at petitioner's lounge. Although that is some indication that the groups were engaged in an independently established business, we cannot say that it necessarily establishes that proposition. Therefore, as to those four groups the referee did not err in concluding that petitioner did not establish that they are independent contractors.

■ As to two of the groups, however, the evidence establishes as a matter of law that they were customarily engaged in an independently established business. Cheri Zimbleman, leader of Cheri and The Kountry Kastaways, testified that she entered into a written contract with petitioner for her band to perform in petitioner's lounge. She had a taxpayer's identification number under the name Cheri and The Kountry Kastaways filed with the Internal Revenue Service and filed a 1099 Form for each musician in her band, showing the income received by them. The group always played under a written contract. She also testified that, although she only played for one wedding during the time that the band was playing at petitioner's lounge, she could accept any engagements she chose. It was her decision to make. She conducted rehearsals with the musicians and selected the music they would play. The band used business cards, with her home telephone number. She said that the band members definitely did not consider themselves employes of petitioner. They had their own instruments, and she had sound equipment worth about $2,500. We conclude that Cheri and The Kountry Kastaways is an independent contractor under the statute.

The last musical group, The Country Swing, was headed by Sally Duncan. It had four members, including Duncan. Each member had his or her own instrument, and the band had sound equipment worth between $4,000 and $5,000. They had business cards with the name of the group and the members' telephone numbers that were distributed where they played. The cards were used to advertise and obtain other engagements. Although they did not play at another location during their engagement at petitioner's lounge, they played

other places in the area both before and after playing for petitioner. Duncan testified that she did not consider the band to be an employe of petitioner, but rather an independent contractor. It played at petitioner's lounge under an oral contact that contained a "two-week clause," that is, it was terminable by either side on two weeks notice. We conclude that petitioner has established that The Country Swing is an independent contractor.

The other disputed individuals included a person who painted the stripes on petitioner's parking lot, two painters, two carpet layers, a carpenter and a person who did some landscaping for petitioner. We address each in turn.

■       Guy Neighbors painted the stripes on petitioner's parking lot in 1979 and received $266.42. He had equipment worth about $2,300 and traveled with that equipment throughout Oregon, Washington, Idaho and California. At the time of the hearing he was on his way to perform a job in Arizona. He had been in that business for 23 years. He provided the specialized paint that is required and gave a written estimate of the cost of the job before undertaking it. He guaranteed his work for two years. He did at least five or six jobs per week and sometimes two or three jobs per day, depending on the size of the job. When he did petitioner's parking lot, he was instructed to paint over the stripes that were already there. Otherwise he was not instructed on how to proceed.

Neighbors is clearly an independent contractor. We are at a loss to understand how the referee concluded otherwise. We have repeatedly stated that investment of large sums of capital is not required to establish an independent business, *see The Carpet Mill v. Emp. Div., supra,* nor is it necessary to hire employes, to advertise or to have a separate telephone number for the business. There are individuals who establish an independent business on the basis of providing a service through their own personal labor. *The Carpet Mill v. Emp. Div., supra.* They are no less independent contractors because they provide a service than is an independent business that sells a product. The referee erred concluding that Neighbors is not an independent contractor.

■       Dennis White has been a painter for 20 years. He did mostly small jobs for petitioner, from a few hours to a few weeks. He was usually paid on the basis of time and materials

but was occasionally paid by the job. He would present petitioner with statements for his work and was paid on those statements. He provided his own equipment, but petitioner provided the paint, because it was able to get the paint more cheaply. White had a van in which he transported his equipment. He had business cards with his home telephone number; he operated his business out of his home. He had used business cards for the last 13 years. He had worked for many different individuals and businesses, perhaps 100 to 200 during 1980 alone, and had a line of credit at the paint store where he usually obtained paint and supplies. He painted for others during the same period of time that he did painting for petitioner.

Hanson told White what he wanted painted and what end-product he wanted and made an inspection when each project was finished. White performed the task of painting as he chose; he was not instructed by petitioner. Hanson came to know of White's work because he did painting for other motels and restaurants in the area. White was paid by petitioner $158.40 in 1978, $42 in 1979 and $634.50 in 1980.

We conclude that petitioner established that White is an independent contractor. Although he was told *what* to paint, he was free from petitioner's control and direction in doing the painting. The state emphasizes that White testified that petitioner *could* have told him how to do the work he undertook and the fact that petitioner told White what and where to paint. For example, White was asked at the hearing whether petitioner could have told him to cover a bush if paint were dripping on it. White testified that petitioner could have.

That is not the kind of ability to control that the statute refers to. The statute contemplates that an employer may enter into a contract with an independent contractor. Obviously a contract will specify what is to be painted and, even if impliedly, will ordinarily require that the work be done in an acceptable manner. That does not necessarily mean that there is an employment relationship. In this instance petitioner has shown that White was free from direction or control and that he had an independently established painting business.

■ Thomas Emerson received $50 from petitioner in 1980 for painting. Whether or not Emerson was free from petitioner's direction and control, we conclude that the referee did

not err in determining that petitioner did not show that Emerson customarily engaged in an independently established business at the time that he did the painting for petitioner in 1980. Emerson's testimony indicated that he had had a painting business at one time. He had been a licensed contractor and had been incorporated. However, by 1980 both the license and the incorporation had lapsed, he was working for the county, and painting was no longer his principal occupation. When asked, he agreed that "for all intents and purposes if [he had] had a painting business it was just about wound down to nothing by 1980." The referee could properly conclude that Emerson was not an independent contractor when he worked for petitioner.

■    Robert Becker received $366 in 1978 and $438.85 in 1979 for laying carpet. The referee found that he had two or more effective contracts, held himself out as an independent contractor, used business cards and furnished substantially all of the tools and supplies required for the job. Petitioner supplied the carpet. Becker testified that he had a registered assumed business name and a business checking account. He estimated that his equipment was worth about $1,000. Before he laid the carpet for petitioner, he provided a written estimate of the cost and presented a bill when he was finished with the job. He testified that he was not instructed on how to do the job, but that petitioner relied on his knowledge and experience. He did say that petitioner could have told him how the carpet was to be laid, because petitioner was paying for the installation. Hanson testified that he did not supervise Becker's work, but inspected the carpet after it was installed and before paying Becker.

We conclude that petitioner has shown as a matter of law that Becker was free from the control and direction of petitioner in installing the carpet. The fact that petitioner's manager would inspect the performance of one who contracted to lay the carpet does not mean that the installation was under the control or direction of petitioner. Again, the fact that Becker testified that petitioner could have instructed him on how the carpet was to be laid is not dispositive. Becker was hired because he knew how to lay carpet. Both parties understood that to be the basis of the agreement. We also conclude that Becker was customarily engaged in an independently

established business at the time he installed carpet for petitioner. The referee erred in holding that Becker is an employe of petitioner.

Our conclusions are the same for the other carpet layer who performed services for petitioner during this period, William McKinney. He performed services for petitioner in 1980, installing carpet on three different occasions and receiving a total of $2,383.66. The facts surrounding his performance are similar to Becker's. His business was operated on much the same basis. We conclude that as a matter of law he is an independent contractor.

■ As to the last two individuals in issue here, Larry McCall and Steve Robeck, we conclude that the referee did not err in determining that they were not shown to be independent contractors. McCall did landscaping for petitioner over the course of one summer. Petitioner purchased about 300 juniper bushes and some bark mulch, and McCall planted the bushes and spread the bark mulch. He used his own hand tools, but petitioner rented a small tractor to move the bark mulch. Whether or not McCall was free from petitioner's direction and control, he clearly did not have an independently established business. He was, during the summer, attempting to establish a landscaping business, but that was never accomplished. In the fall he was hired by petitioner as a maintenance man. The work McCall did for petitioner was the only landscape work his new "business" did. The referee did not err in concluding that he is an employe.

■ Steve Robeck was a carpenter who built two stairways for petitioner and was paid $850. According to Hanson, Robeck worked under an oral contract and was instructed to make the stairways similar to an existing stairway on the premises. He worked on the project for about two months and provided his own tools and equipment. Hanson testified that Robeck worked on other jobs while he was building the stairways. Robeck, however, left the state soon after completing the project for petitioner in 1978. Although an inference could be drawn that Robeck was engaged in an independently established business, that conclusion is not a necessary one. The referee did not err in concluding that petitioner did not prove Robeck's independent contractor status.

In summary, we conclude that petitioner has shown as a matter of law that Cheri Zimbleman and Sally Duncan and their musical groups were independent contractors, as were Dennis White, Robert Becker, William McKinney and Guy Neighbors. The remaining musical groups, Country Squire, The Country Mavericks, The Roger Keller Band and Melody Three, as well as Thomas Emerson, Larry McCall and Steve Robeck were properly held to be employes of petitioner.[1]

Affirmed in part; reversed in part; and remanded for a determination of the deficiency owed by petitioner in light of this opinion.

---

[1] We question the appropriateness of producing this lengthy opinion. It shall be our policy hereafter to report the outcome of unemployment tax cases only in summary fashion.